TOWNSEND R. MOREY & another[1] *vs.* MARTHA'S
VINEYARD COMMISSION.

Dukes County. February 4, 1991. - April 18, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Martha's Vineyard Commission. Administrative Law*, Regulations, Agency's authority. *Statute*, Construction.

Statute 1977, c. 831, creating the Martha's Vineyard Commission and providing for the commission's review and approval of certain proposed construction projects on the island of Martha's Vineyard ("developments of regional impact"), allows referral to the commission by a permit-granting authority only in the town where a project is to be located; the commission exceeded its statutory grant of authority by promulgating a regulation purporting to allow municipal agencies of any town on the island to request the commission to treat a project in another town as a "development of regional impact." [817-820]

CIVIL ACTION commenced in the Superior Court Department on July 31, 1986.

The case was heard by *Elbert Tuttle*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard W. Renehan* (*Jane S. Schacter* with him) for the plaintiffs.

*Michael Halley* (*Eric W. Wodlinger* with him) for the defendant.

LYNCH, J. The plaintiffs appeal from a Superior Court judgment upholding a decision of the Martha's Vineyard Commission (commission). The commission's decision restricts construction on a lot the plaintiffs own in Edgartown. We transferred the case here on our motion, and we now re-

---

[1] Alice Bourne.

verse on the ground that the commission lacked jurisdiction under St. 1977, c. 831, amending St. 1974, c. 637, to review a proposed building on the plaintiffs' lot.

We begin with a brief overview of the mission and procedures of the agency.[2] The purpose of the commission is to preserve the island's many natural and historical treasures "by protecting these values from development and uses which would impair them, and by promoting the enhancement of sound local economies." St. 1977, c. 831, § 1 (hereinafter the enabling statute). Therefore the enabling statute, in pertinent part, authorizes the commission to review "developments of regional impact" (DRI), id. at § 13, which the statute defines as developments which, "because of their magnitude or the magnitude of their effect on the surrounding environment, are likely to present development issues significant to more than one municipality of the island of Martha's Vineyard." Id. at § 12. Local agencies may not grant a development permit for a DRI without the commission's approval. Id. at § 16.

Section 13 of the enabling statute authorizes local permitting agencies to refer such applications to the commission for review.[3] Under § 13, after concluding that a project will have regional impact as determined by criteria promulgated by the commission, the "governmental agency within each municipality which has responsibility for issuing a development permit" shall refer the permit application to the commission. Id. at § 13. The commission has formulated "standards and

---

[2]For more detailed discussion of the purpose and structure of the commission, see Woods Hole, Martha's Vineyard & Nantucket S.S. Auth. v. Martha's Vineyard Comm'n, 380 Mass. 785, 788-793 (1980); Island Properties, Inc. v. Martha's Vineyard Comm'n, 372 Mass. 216, 218-222 (1977).

[3]Section 13, in its entirety, reads as follows: "The governmental agency within each municipality which has responsibility for issuing a development permit shall in accordance with the standards and criteria approved pursuant to section seven determine whether or not a proposed development, for which application for a development permit has been made, is one of regional impact; if so, it shall refer the application for the development permit to the commission." St. 1977, c. 831, § 13.

criteria" and an administrative checklist, generally focusing on the size or commercial nature of the project, to guide the agency's determination of whether a project is a DRI. See *id.* at §§ 7, 12.

In addition, the commission itself has established an alternative procedure for referral of projects to the commission. Under the commission's regulation 3.101 (reproduced in full in the margin), any town or State agency may request that the commission designate a proposed construction project in another town as a DRI. According to the regulation, after such a "cross-town referral," the commission, rather than the local permitting agency where the project is located, may declare the project to be a DRI if it satisfies at least one of the considerations listed in St. 1977, c. 831, § 13.[4]

The facts of this case are not in dispute. The plaintiffs (who are brother and sister) own a parcel of vacant, waterfront land on North Water Street in Edgartown, overlooking Edgartown Harbor.[5] On December 6, 1985, the plaintiff Bourne applied to the Edgartown building inspector for the necessary permit to build a guest house on the lot, construction of which was permitted under the Edgartown zoning bylaw.

On February 25, 1986, the selectmen of Edgartown concluded that the town could not refer the proposed building to

---

[4]The commission's regulation 3.101 reads: "Any development, with the concurrence of the Martha's Vineyard Commission, which is within one town and which a state agency or the planning board, conservation commission, board of health, or selectmen of another town has requested be designated a development of regional impact [shall be presumed to be a DRI]. In concurring with such a designation, the Martha's Vineyard Commission shall find the proposed development fulfills at least one of the considerations in Section 13 of Chapter 831, as amended, of the Acts of 1977." The reference to § 13 of the enabling statute appears to be an error because that section does not contain the list of "considerations" mentioned. The section apparently intended by the regulation is St. 1977, c. 831, § 12.

[5]At the time of the commission's decision, the plaintiff Bourne was the sole owner of the lot. At the time of trial, however, title to the lot had been transferred to a trust of which Bourne and Morey are each 50% beneficiaries. The record does not reveal the identity of the trustee.

the commission for review because it did not satisfy the criteria for a DRI as delineated in the commission's "standards and criteria" and administrative checklist. Therefore, the Edgartown selectmen decided to ask the selectmen of West Tisbury to refer the application to the commission for review as a "cross-town referral." The Edgartown selectmen wrote to their counterparts in West Tisbury that a building on the site would block the scenic vista from North Water Street to Edgartown Harbor and the island of Chappaquiddick, and therefore that the proposed construction was "a regional issue for obvious reasons." One week later, the board of selectmen of West Tisbury voted to make the cross-town referral to the commission, noting that "it will give Edgartown an opportunity to comment on this proposed project." The chairman of the West Tisbury board also noted in acknowledging Edgartown's request that, "under . . . regulations now in affect [sic], you are prevented from doing this."

After a public hearing, the commission voted to approve the application to build on the plaintiffs' lot, but imposed several conditions. See St. 1977, c. 831, § 16 (permitting approval with conditions). The conditions limited the size and number of structures on the lot to a greater extent than the local zoning requirements, and required that the plan be submitted to the Edgartown conservation commission for further review.

The plaintiffs appealed the decision to the Superior Court pursuant to St. 1977, c. 831, § 18. There the plaintiffs argued, in pertinent part, that the cross-town referral procedure is an impermissible expansion of the commission's statutory grant of authority, which is limited by § 13 of the enabling act to the review of a project determined to be a DRI by the permitting agency of the town in which the project is located.[6] Thus, the plaintiffs contended, the commission's decision was void.

---

[6]The plaintiffs also argued that the conditions imposed by the commission effected an unconstitutional taking, and that the commission's decision was unsupported by the evidence. They offer the same arguments before this court. Because we rule that the commission exceeded the scope of its

The judge upheld the commission's decision, however, ruling in part that the regulation allowing cross-town referrals did not contradict § 13. He noted that, while § 13 empowers the local permitting agency to refer applications to the commission, it does not exclude other referral procedures. The judge relied on § 20 of the amended enabling act, providing that regulations which were enacted pursuant to the original enabling statute, St. 1974, c. 638, amended by St. 1977, c. 831, and which were in effect when the amended statute became effective, "shall continue in full force and effect." St. 1977, c. 831, § 20.[7] He ruled that this provision ratified the cross-town referral regulation, which was in effect when the amended version of the enabling act was passed in 1977.[8] Finally, the judge ruled the cross-town referral procedure to be consonant with the legislative goal of ensuring broad review of the regional impact of proposed projects because it provided another avenue to bring such projects before the commission. This ruling was in error.

The regulation permitting cross-town referrals impermissibly arrogates to the commission broader authority than the Legislature has chosen to grant it. Section 13 plainly establishes that the municipal agency with responsibility for issuing a development permit shall refer the project to the com-

---

jurisdiction in accepting the cross-town referral of the plaintiffs' application, however, we do not reach these arguments.

[7]The relevant portion of § 20 reads as follows: "All orders, actions, guidelines, standards and criteria, designations, procedures, by-laws, development ordinances and by-laws, regulations, conditions and modifications and decisions duly made . . . [by] the said Martha's Vineyard Commission, as so established, which arise from or relate to the exercise of powers or the performance of duties under [St. 1974, c. 637, the original enabling act,] and which are in effect immediately prior to the effective date of this act, shall continue in full force and effect and the provisions thereof shall thereafter be enforced, until superseded, revised, rescinded or cancelled in accordance with this act and any other applicable law." St. 1977, c. 831, § 20.

[8]The commission's regulation 3.101, permitting cross-town referrals, was originally adopted in 1975, pursuant to St. 1974, c. 637, §§ 8, 13. The amended version of the enabling act took effect on December 21, 1977. See St. 1977, c. 831, § 27.

mission. *Id.* at § 13. Other sections of the statute also suggest that the Legislature envisioned referral by the local permitting authority. See *id.* at §§ 14 (describing the "referring agency" as that which may "grant a development permit"), 16 (same). Thus, the language of the statute suggests that the Legislature intended *only* the local permitting agency to refer projects to the commission.

It is true, as the trial judge noted, that the enabling act does not explicitly exclude other referral procedures. An administrative agency, however, has only the powers and duties expressly conferred upon it by statute and such as are reasonably necessary to carry out its mission. See *Hartford Accident & Indem. Co.* v. *Commissioner of Ins.*, 407 Mass. 23, 27 (1990); *Saccone* v. *State Ethics Comm'n*, 395 Mass. 326, 335 (1985). The cross-town referral procedure is neither. It is irrelevant, therefore, that the enabling act does not expressly exclude the cross-town referral procedure, or that the procedure arguably promotes the goals of the act; the procedure is ultra vires because it is neither expressly nor impliedly granted by statute. The commission had no authority to promulgate a regulation which exceeds the authority conferred upon it by the enabling statute. *Electronics Corp. of America* v. *Commissioner of Revenue*, 402 Mass. 672, 676-677 (1988).

The commission points to various sections of the enabling statute to save the cross-town referral regulation. Section 12 empowers the commission to adopt criteria identifying which project will have sufficient regional impact to be considered DRI. St. 1977, c. 831, § 12. Logically, however, this provision cannot be read to limit the requirement under § 13 that those criteria be applied by the local permitting authority, which alone may then refer a project to the commission.[9]

---

[9] Statute 1977, c. 831, § 12, also lists seven factors that the commission must consider in determining whether a project is of regional impact, including "the location of a type of development near a waterway." *Id.* at § 12 (*f*). The commission argues that the plaintiffs' application falls within this category, and therefore that Edgartown could have referred the application to the commission without resorting to the cross-town referral pro-

Nor does § 20, upon which the Superior Court judge relied in upholding the regulation, validate the cross-town referral regulation. Section 20 provides that regulations "duly made" by the commission under the original enabling act, St. 1974, c. 637, shall continue to be enforced under the amended version of the act. St. 1977, c. 831, § 20.[10] Because the regulation exceeded the commission's statutory grant of authority under the original enabling act, however, it cannot be considered "duly made." See *Electronics Corp. of America, supra.* Furthermore, to the extent that the two provisions conflict, under principles of statutory construction the general language of § 20 must yield to the more precise language of § 13, in which the Legislature specifically addressed the referral procedure. *Risk Management Found. of Harvard Medical Insts.* v. *Commissioner of Ins.*, 407 Mass. 498, 505 (1990). See *Crocker* v. *Martha's Vineyard Comm'n*, 407 Mass. 77, 80-81 n.6 (1990). This construction of the two provisions is reinforced by the fact that, in amending the enabling act, the Legislature reenacted the provision which provides for referral only by local agencies. Compare St. 1974, c. 637, § 14, with St. 1977, c. 831, § 13. "When statutory language is reenacted, it is a principle of statutory construction that no change was intended in its meaning or scope." *Risk Management Found., supra* at 503, quoting *General*

_____

cedure. We disagree. If the location of a project "near a waterway," without more, distinguished it as a DRI, then an inordinate number of projects — regardless of size or regional impact — would be subject to review by the commission because, on an island the size of Martha's Vineyard, virtually everything is arguably "near a waterway." We construe § 12 (*f*), therefore, merely as identifying proximity to a waterway as one factor to be weighed in deciding whether a proposed construction project is of regional impact, that is, a project "likely to present development issues significant to more than one municipality of the island of Martha's Vineyard." *Id.* at § 12. This construction comports more closely with the commission's legislative mandate and the remaining portions of § 12. Thus, we cannot agree that the proximity of the plaintiffs' lot to the water, standing alone, converts the proposed construction into a "development of regional impact."

[10]See note 7, *supra.*

*Elec. Co.* v. *Commissioner of Revenue*, 402 Mass. 523, 530 (1988).

Finally, the commission invokes § 7 of the enabling act. St. 1977, c. 831, § 7. That provision states that the "standards and criteria" promulgated by the commission to define a DRI must be approved by the Executive Office of Environmental Affairs (EOEA). The commission relies on the final sentence of § 7, providing that the "standards and criteria" established under the original enabling act (1) "shall be deemed in full compliance with this section" and (2) "shall continue in full force" after passage of the amended act. *Id.* This sentence does not ratify the cross-town referral regulation, however. Even assuming that regulation 3.101 is among the "standards and criteria" established within the original act, the first clause merely states that prior existing standards and criteria are deemed in compliance with the requirement of approval by the EOEA imposed by § 7. The general language of the second clause, like the similar language in § 20, must yield to the more specific terms of § 13 under the principles of statutory construction discussed above. Thus, we construe neither clause as ratifying the commission's regulation 3.101, establishing the cross-town referral procedure.

We hold, therefore, that the cross-town referral procedure is invalid. The commission's enabling act permits only the permitting agency in the town where a project is located to refer that project to the commission for review as a DRI. Because the plaintiffs' application was not referred by Edgartown, the commission lacked jurisdiction to review the application. Accordingly, the judgment is reversed and a new judgment shall be entered annulling the commission's decision as to the plaintiffs' lot discussed in this opinion.

*So ordered.*