Commonwealth vs. Malcom S. Maker.[1]

Suffolk. January 6, 2011. - March 3, 2011.

Present: Ireland, C.J., Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Sex Offender Registration and Community Notification Act. Sex Offender. Statute, Construction. Administrative Law, Regulations.*

A regulation of the Sex Offender Registry Board (board) requiring incarcer-
ated level 2 and level 3 sex offenders to register in person at their local
police department within two days of their release from custody exceeded
the board's statutory authority and was therefore invalid, where nothing in
the sex offender registry statute, G. L. c. 6, §§ 718C-178P, authorized the
board to create new registration requirements such as the regulation at
issue. [48-51]

Complaint filed in the Central Division of the Boston Municipal
Court Department on January 23, 2009.

Questions of law were reported by *Thomas C. Horgan*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Alec Zadek*, Assistant District Attorney, for the Com-
monwealth.

*Elizabeth Caddick* for the defendant.

*Beatriz E. Van Meek*, Special Assistant Attorney General, for
Sex Offender Registry Board, amicus curiae, submitted a brief.

Cowin, J. The defendant pleaded guilty to one count of failing
to register as a sex offender.[2] See G. L. c. 6, § 178H. The
complaint was based on the failure of the defendant, a level 3
sex offender, to comply with a regulation promulgated by the

_____

[1]As is our custom, we spell the defendant's name as it appears in the com-
plaint.

[2]A "sex offender" is defined in G. L. c. 6, § 178C, as "a person who has
been convicted of any violation of Massachusetts law enumerated as a sex of-
fense" or a similar violation of the law in another jurisdiction. *Doe, Sex Of-
fender Registry Bd. No. 151564* v. *Sex Offender Registry Bd.*, 456 Mass. 612,
615 (2010).

Sex Offender Registry Board (board) that requires incarcerated level 2 and 3 sex offenders to register in person at their local police department within two days of their release from custody. See 803 Code Mass. Regs. § 1.04(7)(b) (2004). We consider whether the regulation under which the defendant was charged exceeded the board's authority.

At the request of the Commonwealth, the judge who accepted the plea reported to the Appeals Court two questions of law concerning the regulation:

> "1. If an individual is classified as a level 2 or 3 sex offender pursuant to G. L. c. 6[,] §[§] 178C-[178]P[,] and incarcerated in the Commonwealth of Massachusetts, must that individual report in person with the police department in the city or town where he plans to reside within two days of release from incarceration?

> "2. Does failure to comply with 803 [Code Mass. Regs. §] 1.04(7)(b) as promulgated by the Sex Offender Registry Board, pursuant to G. L. c. 6[,] § 178D, constitute a violation of G. L. c. 6[,] § 178[H]?"

We transferred the case on our own motion. Because we conclude that the regulation exceeds the board's statutory authority and is invalid, we answer the first question, "No," and order that the defendant's sentence and conviction be vacated. Because we conclude that the regulation is invalid, we answer the second question, "No," as well.[3]

1. *Facts and procedural history.* In 2008, the defendant, whom the board previously had "finally classified" as a level 3 sex offender,[4] was released from incarceration and began residing in a homeless shelter in Boston. Although apparently he had

---

[3]We acknowledge the amicus brief of the Sex Offender Registry Board (board).

[4]Sex offenders are classified by the board using a two-part process that results in final classification as a level 1, 2, or 3 offender. Offenders are given a level 3 classification "[w]here the board determines that the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination" of information about the offender. See G. L. c. 6, § 178K (2) (*c*). Because the regulation at issue concerns offenders who have been "finally classified" and the defendant does not challenge his final classification, the classification process need not concern us here. The board's procedures for classification have been detailed in .

complied with the statutory requirement that prior to his release he provide the board with his intended future address, see G. L. c. 6, § 178E (*a*), one month after his release the board found that the defendant had failed to register pursuant to the regulation at issue, which states in relevant part:

> "If the [b]oard finally classified an incarcerated sex offender as either a Level 2 or Level 3 Offender before or during the sex offender's incarceration . . . the [b]oard shall notify the offender and the local police department in the city or town in which the offender intends to live[] . . . that the offender must report in person to that police department within two days of his release from custody to register pursuant to 803 [Code Mass. Regs. §§] 1.29 or 1.30."

803 Code Mass. Regs. § 1.04(7)(b). The defendant does not dispute that he failed to appear at his local police department within two days of his release and accordingly that he failed to comply with the regulation.

The board determined that the defendant, in violation of G. L. c. 6, § 178H,[5] had failed to register as a sex offender, and the Commonwealth filed a complaint against him in the Central Division of the Boston Municipal Court Department. He pleaded guilty to the charge and was sentenced to two years committed in the Suffolk County house of correction.[6] Subsequently, pursuant to Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004), the judge reported the questions set forth above.

2. *Statutory scheme.* The sex offender registry statute, G. L. c. 6, §§ 178C-178P (statute), subjects all sex offenders in Massachusetts to a comprehensive scheme of classification, registration, and tracking. See *Roe* v. *Attorney Gen.*, 434 Mass. 418, 423-426 (2001). Offenders must register with the board, provide home and work addresses, notify the board of any changes, and

---

prior cases. See *Doe, Sex Offender Registry Bd. No. 3974* v. *Sex Offender Registry Bd.*, 457 Mass. 53, 54 n.2 (2010).

[5]General Laws c. 6, § 178H (*a*), states, in relevant part: "A sex offender required to register pursuant to this chapter who knowingly: (i) fails to register; (ii) fails to verify registration information; (iii) fails to provide notice of a change of address; or (iv) who knowingly provides false information shall be punished in accordance with this section."

[6]The defendant is currently serving that sentence concurrently with another sentence on a different charge.

verify their information at regular intervals. See G. L. c. 6, §§ 178E-178F¹/₂. Incarcerated offenders must register prior to their release by mailing their information and future home and work addresses to the board; the board transmits this information to local police. See G. L. c. 6, § 178E (a).[7] With respect to verification, while level 1 offenders can provide verification by mail, level 2 or 3 offenders must appear in person at their local police department, annually or every thirty days if the offender is living in a homeless shelter, to verify their information. *Id.* at § 178F¹/₂. When registering, verifying, or changing address, offenders must provide written address verification. See *id.* at § 178E (m).

The statute also creates the board and describes its duties. The board is empowered to maintain the sex offender registry and create necessary forms; conduct hearings; develop guidelines for classifying offenders and relieving offenders from registration obligations; devise plans to locate offenders; and share offender information with law enforcement and the public. See G. L. c. 6, §§ 178D, 178K. In addition to those specific duties, the board is authorized to "promulgate rules and regulations to implement the provisions of" the statute. *Id.* at § 178D.

3. *Discussion.* By requiring incarcerated level 2 or 3 offenders to verify their registration data in person within two days of release, the regulation at issue in this case adds a further component to the statutory registration scheme detailed above. See 803 Code Mass. Regs. § 1.04(7)(b). The first reported question requires us to consider whether the board has the authority to enact such a regulation. We conclude that it does not and that the regulation is invalid.

An administrative agency's duly enacted regulations are entitled to a presumption of validity. See *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 775 (2006). Regulations are invalid, however, when the agency utilizes powers "neither expressly nor impliedly granted by statute." *Morey* v. *Martha's Vineyard Comm'n*, 409 Mass. 813,

---

[7]Different procedures apply for offenders on probation or parole; convicted of a sex offense but not subject to a sentence greater than ninety days; newly residing, working, or attending school in the Commonwealth; or changing their residence, work address, or school. See G. L. c. 6, § 178E.

818 (1991). Although we look to the statute as a whole to determine the scope of the agency's power, see *Grocery Mfrs. of Am., Inc.* v. *Department of Pub. Health,* 379 Mass. 70, 75 (1979), an agency can exercise only "the powers and duties expressly conferred upon it by statute and such as are reasonably necessary to carry out its mission." *Morey* v. *Martha's Vineyard Comm'n, supra.*

Nothing in the statute authorizes the board to create new registration requirements such as the regulation here at issue. The statute does not delegate expressly, to the board or any other entity, the power to modify or supplement the registration requirements created in the statute. Nor is this power implied by the board's duties with respect to offender classification and data collection and dissemination. The extensive system of registration requirements created by the statute ensures that the board receives the information it needs to fulfil its statutory duties. Creating additional registration requirements cannot fairly be considered "necessary to carry out its mission." The wisdom or practical advantages of creating new registration obligations is of no relevance when the board lacks the power to do so. See *id.*

It is true that, in addition to the board's specific duties, the statute confers upon the board a more general authority to "promulgate rules and regulations to implement the provisions of" the statute. G. L. c. 6, § 178D. The Commonwealth argues that this language permits the board to promulgate any regulations "reasonably necessary" to effectuate the statute's over-all purpose of protecting the public from sex offenders. See St. 1999, c. 74, § 1. This argument grants to the board a sweeping authority unjustified by the language of G. L. c. 6, § 178D. That section authorizes regulations to implement the statute; it does not confer an unfettered authority to enact any regulation that protects the public from sex offenders. Moreover, in light of the comprehensive registration requirements already present in the statute itself, it is difficult to imagine that any further registration obligations are "reasonably necessary."

The board, which is not a party here but has participated in this case as amicus curiae, suggests that the regulation is not a new requirement at all but rather a mechanism for ensuring compliance with existing registration requirements; and that with

respect to incarcerated offenders, the statutory registration require-
ments are insufficiently comprehensive in two particulars. By
addressing these "gaps," the board argues, the regulation merely
implements the statute's provisions and is a proper exercise of
the board's power pursuant to G. L. c. 6, § 178D.

The first alleged "gap" noted by the board pertains to the obli-
gation of level 2 and 3 offenders to appear at their local police
department annually (or every thirty days if homeless) to verify
registration data. See G. L. c. 6, § 178F$^1$/$_2$. The second "gap"
pertains to the requirement that offenders provide verification of
address "[u]pon registering." See *id.* at § 178E (*m*). The board
contends that, although incarceration renders compliance with
these duties impossible, incarcerated offenders are not exempt
from these requirements. The regulation fills the alleged "gaps"
by ensuring that such offenders appear and confirm their ad-
dresses at the first possible date, i.e., just after release.

The board's argument is unpersuasive because it fabricates
gaps in the statute where none exist. The Legislature is unlikely
to have overlooked the fact that incarcerated offenders cannot
report to local police or confirm a future address. Moreover, us-
ing the statutory scheme, the board can acquire and verify the
information and whereabouts of a level 2 or 3 offender released
from incarceration just as well as it can for all other level 2 or 3
offenders. Before his release, an incarcerated offender must register
with the board and provide his intended future address. See G. L.
c. 6, § 178E (*a*). If, after his release, he does not live where he
intended to live, he must inform the board of that change of ad-
dress and confirm his new address. See *id.* at § 178E (*h*), (*m*).
And on a regular basis thereafter, he must verify his information
in person with the local police. See *id.* at § 178F$^1$/$_2$.

The regulation at issue imposes an additional registration
obligation but provides no information or security that the statute,
standing alone, does not provide. Because it does not imple-
ment the statutory registration requirements but rather adds to
them, and because the board is not vested with any authority to
create new registration requirements, 803 Code Mass. Regs.
§ 1.04(7)(b) is outside the board's authority and is invalid.[8]

4. *Conclusion.* For the reasons set forth above, we answer the

---

[8]Even if the statutory gaps asserted by the board were legitimate bases for

first reported question, "No," and order that the defendant's sentence and conviction be vacated. Because we conclude that the regulation is invalid, we answer the second question, "No," as well. The matter is remanded to the Boston Municipal Court Department for further proceedings consistent with this opinion.

*So ordered.*

---

the board to take regulatory action, the regulation at issue is both overinclusive and underinclusive in addressing those gaps. Because the regulation requires all incarcerated offenders to report after release, even if the particular offender's incarceration has not caused him to miss an annual verification date, it is overinclusive. Because the regulation applies only to level 2 and 3 offenders, even though all incarcerated offenders are unable to comply with the address confirmation requirement, it is underinclusive.