JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 16748 *vs.*
SEX OFFENDER REGISTRY BOARD.

No. 11-P-308.

Essex. February 2, 2012. - July 16, 2012.

Present: CYPHER, GREEN, & TRAINOR, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act.*
*Administrative Law,* Agency's authority, Regulations. *Practice, Civil,* Sex
offender.

A sex offender (plaintiff) did not waive his claim that a regulation promulgated
by the Sex Offender Registry Board (board) exceeded the scope of the
board's authority by failing to present the claim to the board, where the
board did not have the inherent authority to strike down the regulation or
to declare it void; further, despite the preference for presenting such a
challenge to the regulation in a declaratory action, this court undertook to
consider the issue raised in the plaintiff's appeal from a final order of clas-
sification, where the issue was purely one of statutory interpretation, a
quintessential judicial responsibility; and where the parties had fully briefed
the issue and resolution of the claim would promote judicial economy.
[155-158]
Discussion of the statutory framework subjecting all sex offenders in Mas-
sachusetts to a comprehensive scheme of classification, registration, and
tracking. [158-160]
This court concluded that a regulation promulgated by the Sex Offender
Registry Board (board) that permits the board to increase a registered and
finally classified sex offender's level of classification, absent conviction of
a new sex offense, exceeded the board's authority. [160-163]

CIVIL ACTION commenced in the Superior Court Department on
February 11, 2010.

The case was heard by *Nancy Holtz,* J., on a motion for judg-
ment on the pleadings.

*Brandon L. Campbell* for the plaintiff.

*Paul Tuttle* for the defendant.

CYPHER, J. We are presented with the question whether a
regulation promulgated by the Sex Offender Registry Board

(board) that permits the board to increase a "registered and finally classified sex offender['s]" level of classification, absent conviction of a new sex offense, exceeds the board's authority. See 803 Code Mass. Regs. § 1.37C(1), (3) (2004). We conclude that it does.

*Background.* In September, 2003, the plaintiff was classified by a hearing examiner of the board as a level two sex offender after his second offense in 2002, for open and gross lewdness, in accordance with G. L. c. 6, § 178K(2)(*b*). The examiner's decision became the decision of the board, and the plaintiff accepted this final classification without challenge. See G. L. c. 6, §§ 178K(2)(*b*), 178L(1)(*c*) & (2). In August, 2009, the plaintiff was charged in District Court with three counts of rape and "breaking and entering." On or about September 26, 2009, the board notified the plaintiff of its intent to reclassify him as a level three sex offender based on this new information pursuant to 803 Code Mass. Regs. § 1.37C(3) (2004).[1] The plaintiff challenged this classification and requested an evidentiary hearing. G. L. c. 6, § 178L. Before the hearing was held, on or

---

[1]The relevant portion of the regulation reads as follows:

"1.37C(3) *Board Seeks Reclassification of Sex Offender.*

"(a) The Board may, on its own initiative, seek to reclassify any registered and finally classified sex offender upon [r]eceipt of any information that indicates the offender may present an increased risk to reoffend or degree of dangerousness. This could be based on, but not limited to, information indicating the sex offender has:

"1. committed a new sex offense;

"2. been terminated from sex offender specific treatment;

"3. violated the terms or conditions of community supervision;

"4. been incarcerated more than [sixty] consecutive days at any time following his [f]inal [c]lassification;

"5. failed to comply with the provisions of . . . G. L. c. 6, § 178C through [§] 178Q; or

"6. demonstrated a lack of stability in his daily living.

"(b) If a majority of the [f]ull [b]oard determines that the offender may present an increased risk to reoffend or degree of dangerousness, it shall authorize a review of the offender's present classification level. The [b]oard shall then notify the sex offender that his classification level is being reevaluated. The [b]oard shall follow the procedures

about December 2, 2009, the Commonwealth entered a nolle prosequi on all of the August, 2009, charges.

The board, however, continued to seek the plaintiff's upward reclassification, and an evidentiary hearing was held on December 21, 2009. A police report containing the statements of the alleged rape victim was admitted over objection at the hearing as evidence of the new crimes. The hearing examiner rejected the plaintiff's contention that the new information was based on unreliable hearsay and entered a written decision finding that the plaintiff "now poses a high risk to reoffend and a high degree of dangerousness."[2] The examiner ordered the plaintiff to register as a level three sex offender in accordance with G. L. c. 6, § 178K(2)(*c*). The examiner's decision became the final decision of the board. G. L. c. 6, § 178L(2). *Doe, Sex Offender Registry Bd. No. 3974* v. *Sex Offender Registry Bd.*, 457 Mass. 53, 60 (2010) (*Doe, No. 3974*).

The plaintiff filed a complaint for judicial review of the board's decision in the Superior Court pursuant to G. L. c. 6, § 178M, and G. L. c. 30A, § 14. He argued that (1) absent a conviction for a new sex offense, the board lacked subject matter jurisdiction over his case;[3] (2) the regulation that permitted an upward reclassification without a new predicate sex offense

___

detailed in 803 [Code Mass. Regs. §§] 1.05 through 1.07 to arrive at a recommended reclassification level for the offender.

"(c) If the offender rejects the recommended reclassification level, he may request a hearing that follows the procedures detailed in 803 [Code Mass. Regs. §§] 1.08 through 1.25.

"(d) If the offender is reclassified, the [b]oard shall update the information pertaining to him in the sex offender registry and shall also notify the sex offender and law enforcement agencies that the offender has been reclassified pursuant to 803 [Code Mass. Regs. §§] 1.25 and 1.27. In addition, the offender shall be required to comply with registration requirements as indicated in 803 [Code Mass. Regs. §§] 1.28 through 1.30."

[2]The hearing examiner found that "some sexual activity with the alleged victim occurred" and that even apart from this conclusion, the uncontested evidence that showed that the plaintiff had been alone with his sixteen year old neighbor is "cause of great concern for a man with his offending history."

[3]We recognize that a claim of lack of subject matter jurisdiction cannot be waived but note that it was only first clearly articulated in the plaintiff's reply brief. See e.g., *Commonwealth* v. *DeJesus*, 440 Mass. 147, 151 (2003). The

exceeded the board's authority; (3) counsel was ineffective for failing to challenge the board's authority under the regulation to increase his classification level absent a new sex offense; (4) the board's decision was improperly based on unreliable hearsay; and (5) the decision was not supported by substantial evidence. The Superior Court judge affirmed the board's decision. The plaintiff appealed and reiterates the claims he presented in Superior Court, adding that "fairness" demands we address his challenge to the regulation.

Resolution of the challenge to the validity of the regulation that permitted the board to increase an offender's classification in the absence of a new sex offense is dispositive of the remaining issues; therefore, we consider it first.

*Basis for appellate review.* The Commonwealth argues that the plaintiff has waived his right to challenge the validity of the regulation because he failed to raise the issue before the hearing examiner.[4]

Generally speaking, an administrative agency such as the board has only those powers, duties, and obligations expressly conferred on it by statute or reasonably necessary to carry out the purposes for which it was established. *Doe, Sex Offender Registry Bd. No. 10800* v. *Sex Offender Registry Bd.*, 459 Mass. 603, 628 (2011) (*Doe, No. 10800*). The power delegated by the Legislature to an agency does not include the inherent authority to strike down a regulation or declare it void on constitutional grounds such as due process. *Duarte* v. *Commissioner of Rev.*, 451 Mass. 399, 413-414 (2008). *Doe, No. 10800, supra.* See

---

case involved the classification process; therefore, there is no question the board had subject matter jurisdiction over the plaintiff's case. *Doe, No. 3974, supra* at 57 ("The Legislature has empowered the board to hear one particular 'genre' of cases, the classification process"). The more narrow question whether the individual before the board has committed a new sex offense relates only to the elements of a prima facie case and, thus, does not constitute "a subject matter jurisdiction threshold." *Ibid.*

[4]The Commonwealth also argues that the issue ought not be considered under the rubric of ineffective assistance of counsel because it was not first presented in a motion for a new hearing filed with the board. Because our analysis does not evaluate the petitioner's claim as one of ineffective assistance of counsel, we need not consider whether such a claim should be brought in the first instance before the board or in the Superior Court. See *Loe* v. *Sex Offender Registry Bd.*, 73 Mass. App. Ct. 673, 676 n.5 (2009).

*Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 722-723, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983) (party challenging the validity of a regulation must prove in a judicial proceeding "that the regulation is illegal, arbitrary, or capricious"). Therefore, we conclude that the plaintiff did not waive his claim that the regulation exceeded the scope of the board's authority by failing to present the claim to the board, where the board did not have the inherent authority to strike down the regulation or declare it void.[5]

Decisional law has suggested that such challenges be brought by way of declaratory action. The Massachusetts Administrative Procedure Act (codified in G. L. c. 30A) provides that "unless an exclusive mode of review is provided by law, judicial review of any regulation . . . *may be had* through an action for declaratory relief" in the Superior Court (emphasis added).[6] G. L. c. 30A, § 7. See G. L. c. 231A. In *Doe, No. 10800, supra*, the plaintiff directly challenged the constitutionality of regulations that the board must employ to reach a final classification decision and argued that the classification scheme based on those regulations violated his due process rights under both the State and Federal Constitutions. The court reasoned that the board does not have the authority to determine the *constitutionality* of its regulations and ruled that the plaintiff could only obtain relief through a declaratory action. *Id.* at 630. According to the court, such action would have afforded both parties a plenary hearing on the legal and factual basis for upholding or striking down the regulations. *Ibid.*

The statutory language that judicial review *"may be had"* by declaratory action signals, however, that declaratory relief is permissive, not required. Decisional law further suggests that the phrase is intended to negate any inference that might otherwise be drawn from a different section of the statute (G. L.

---

[5]We pretermit any question concerning whether counsel was ineffective for failing to raise a claim before a board that did not have the authority to decide the claim.

[6]For example, the Legislature specifically set forth a provision in the Workers' Compensation Act that permits an administrative judge or the reviewing board to set aside in a particular proceeding a regulation that the judge or reviewing board determines conflicts with the statutory requirement. G. L. c. 152, § 5. No similar provision is found in the board's statutory scheme.

c. 30A, § 14) that *only* a "final decision of an agency in an adjudicatory proceeding" may be judicially reviewed. *Westland Hous. Corp.* v. *Commissioner of Ins.*, 352 Mass. 374, 381 (1967). See generally Cella, Administrative Law and Practice § 771 (1986 & Supp. 2011).

Recent decisions support a conclusion that there are, indeed, other avenues to review regulations promulgated by the board. In *Commonwealth* v. *Maker*, 459 Mass. 46, 47 (2011), the Supreme Judicial Court transferred a case from the Appeals Court on its own motion in which the trial judge had reported two questions concerning whether a regulation exceeded the statutory authority of the board. The court concluded that the regulation was outside the board's authority and invalidated it. More recently, the Supreme Judicial Court invalidated a regulation challenged in an appeal from a final order of classification that followed the appellate route expressed in the statutory text. *Doe, Sex Offender Registry Bd. No. 941* v. *Sex Offender Registry Bd.*, 460 Mass. 336, 341 (2011) (*Doe, No. 941*). See G. L. c. 6, § 178M; G. L. c. 30A, § 14.

Despite the preference for presenting a challenge to a regulation in a declaratory action, we consider the issue raised in this appeal from a final order of classification. The Commonwealth raised no claim below, or on appeal, that the challenge to the regulation must be presented in a declaratory action. Unlike the situation presented in *Doe, No. 10800, supra*, where the plaintiff challenged the constitutionality of the regulations underlying the entire classification scheme and the resolution of the issue may well have required a plenary hearing, here, the issue is purely one of statutory interpretation, a quintessential judicial responsibility. See *Souza* v. *Registrar of Motor Vehicles*, 462 Mass. 227, 229-230 (2012) ("Because the interpretive question here is purely a legal one, and because 'the duty of statutory interpretation rests ultimately with the courts,' we review the board's interpretation de novo"). The Commonwealth does not contend that any procedural characteristic of a c. 30A administrative appeal makes it a less suitable vehicle than a declaratory judgment action for assessment of the board's authority to adopt the regulation at issue here. We are bolstered in our conclusion that appellate review is appropriate where the parties have

fully briefed the issue and resolution of the claim will promote judicial economy. See, e.g., *Commonwealth* v. *White*, 429 Mass. 258, 265 (1999).

*Statutory scheme.* In assessing the regulation at issue, an overview of the statute under which it was promulgated will be useful.

"In 1999, the Legislature passed an emergency law, St. 1999, c. 74, formally entitled, 'An Act improving the sex offender registry and establishing civil commitment and community parole supervision for life for sex offenders' (Act). Based on the premise that sex offenders generally pose a high risk of recidivism and, therefore, greatly threaten the safety of the community, see St. 1999, [c. 74,] § 1, the Act sets forth three mechanisms to protect the public from sex offenders." *Commonwealth* v. *Renderos*, 440 Mass. 422, 428 (2003). It is the first of those mechanisms with which we are concerned here, namely, the establishment of a Statewide computerized sex offender registry. See G. L. c. 6, §§ 178C-178P. See, e.g., *Commonwealth* v. *Maker*, *supra* at 48-49.

The statute subjects all sex offenders in Massachusetts to a comprehensive scheme of classification, registration, and tracking. *Id.* at 48. "Offenders must register with the board, provide home and work addresses, notify the board of any changes, and verify their information at regular intervals. See G. L. c. 6, §§ 178E-178F$^1$/$_2$." *Commonwealth* v. *Maker*, *supra* at 48-49. "The statute also creates the board and describes its duties. [See G. L. c. 6, § 178K.] The board is empowered to maintain the sex offender registry and create necessary forms; conduct hearings; develop guidelines for classifying offenders and relieving offenders from registration obligations; devise plans to locate offenders; and share offender information with law enforcement and the public. See G. L. c. 6, §§ 178D, 178K. In addition to those specific duties, the board is authorized to 'promulgate rules and regulations to implement the provisions of' the statute. *Id.* at § 178D." *Commonwealth* v. *Maker*, *supra* at 49.

Under this statutory scheme there is a presumption that sex offenders must register. *Commonwealth* v. *Ronald R.*, 450 Mass. 262, 264 (2007). The obligation to register is triggered by the conviction of a sex offense, which is a prerequisite to registration.

G. L. c. 6, § 178D. Qualifying convictions are enumerated in the statute and are defined only in terms of offenses, not underlying conduct.[7] See, e.g., *Doe, Sex Offender Registry Bd. No. 151564* v. *Sex Offender Registry Bd.*, 456 Mass. 612, 619 (2010) (*Doe, No. 151564*) (in assessing whether a conviction of an offense that occurred in Maine was a "like violation," the court held that "[i]t is not sufficient that the offender may have engaged in behavior that falls within one of the crimes listed in the registration statute . . . . The offender must be convicted of a crime of which the elements are the same or nearly the same as one of the listed Massachusetts offenses"). Upon being convicted of a qualifying sex offense, the offender must register with the board.[8] See generally *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 785, 787 (2008); G. L. c. 6, § 178D.

In addition to the statutory obligations of a sex offender to register, the decisional law of Massachusetts has added that an offender has a liberty and privacy interest protected by the Declaration of Rights of the Commonwealth that entitles him "to procedural due process before he may be required to register and before information may properly be publicly disclosed about him." *Doe* v. *Attorney Gen.*, 426 Mass. 136, 143 (1997). See *Doe* v. *Police Commr. of Boston*, 460 Mass. 342, 346-347 (2011) (same). In other words, the entire process must be "implemented in a fair manner." *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, 447 Mass. 750, 761 (2006) (*Doe, No. 1211*), quoting from *Aime* v. *Commonwealth*, 414 Mass. 667, 674 (1993). With respect to the specific obligation to register, the Supreme Judicial Court has noted that an offender's registration requirement "does not occur in a vacuum."

[7]We recognize that subsequent to registration, conduct underlying the sex offense may be properly considered by the board when, for example, determining the proper classification level, but our discussion here is directed to the initial and distinct obligation of an offender to register, and the board's resulting authority to initiate and conduct classification proceedings.

[8]There is an exception to the initial duty to register set forth in G. L. c. 6, § 178E(*f*). The section allows a trial judge to relieve certain sex offenders, who have not been sentenced to immediate confinement, from *any* obligation to register with the board. Here, the plaintiff has not raised any issue on appeal related to an adverse ruling after a § 178E(*f*) hearing. See *Commonwealth* v. *Ronald R.*, *supra*.

*Doe, No. 1211, supra.* Rather, the "sex offender . . . is protected from the risk of erroneous deprivation of liberty by the requirement of having been convicted of, and sentenced on, at least one qualifying" offense. *Ibid.*

After being required to register, the offender proceeds to a two-step classification process beginning with an *initial* classification by the board followed by *final* classification based either on a de novo hearing or on the sex offender's failure to object to the initial classification.[9] *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 771-772 (2006). Once the hearing examiner has reached a decision (or the sex offender has not objected to the initial recommendation of the board), the decision becomes final and the sex offender has a right of appeal to the Superior Court. See G. L. c. 6, § 178M; G. L. c. 30A, § 14.

*Discussion.* By permitting the board to reclassify a sex offender on its own initiative, based on subsequent events not resulting in a conviction of a sex offense, and to increase the level of his final classification, the regulation at issue in this case adds a further component to the statutory registration scheme detailed above. See generally 803 Code Mass. Regs. § 1.37C(1), (3); note 1, *supra.*

There is no question that an administrative agency's duly enacted regulations are entitled to a presumption of validity. *Commonwealth* v. *Maker*, 459 Mass. at 49-50. "Regulations are invalid, however, when the agency utilizes powers neither expressly nor impliedly granted by statute. Although we look to the statute as a whole to determine the scope of the agency's power, an agency can exercise only the powers and duties

---

[9]More specifically, the board first makes an initial "recommendation on the offender's duty to register and the appropriate classification level. Second, if the offender rejects the recommendation then the offender is entitled to an individualized evidentiary hearing. The hearing is a proceeding before the board, which bears the burden of proving by a preponderance of the evidence that the offender has a duty to register and determining his final classification. 803 Code Mass. Regs. § 1.10 (2002). The [hearing] examiner is required to issue a written decision containing a statement of the issues . . . ; a summary of evidence, including credibility determinations; specific findings of fact [and] rulings of law." *Commonwealth* v. *Ronald R.*, *supra* at 265, quoting from *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 771-772 (2006) (citations and quotations omitted).

expressly conferred upon it by statute and such as are reasonably necessary to carry out its mission." *Ibid.* (citations and quotations omitted).[10]

Nothing in the statute authorizes the board to reclassify or increase an offender's final classification once it is determined following registration after conviction of a predicate offense. The statute does not delegate expressly, to the board or any other administrative entity, the power to modify upward the final classification determination. Rather, the statute, G. L. c. 6, § 178L, only provides for judicial review of the board's final classification and registration requirements. Nor is this power implied by the board's duties with respect to offender classification. The extensive system created by the statute ensures that the board receives the information it needs prior to determining the offender's final classification.

To the extent that the board receives information (whether suggesting the possibility of another offense, or of some other type) that indicates a classified sex offender "may present an increased risk to reoffend or degree of dangerousness," 803 Code Mass. Regs. § 1.37C(3)(a), the board is only empowered to act if that information shows that the sex offender has been convicted of a new sex offense, the sole trigger under the statute for setting in motion the classification process. In the event a previously classified sex offender is convicted of another sex offense, the statute plainly authorizes the board to commence (or repeat) the classification process.

Absent conviction of one of the specifically enumerated sex offenses in the statute however, the board may not, under the current statutory scheme, act unilaterally and spontaneously to bring an individual within its purview, regardless of how sexually dangerous an individual's behavior may appear or whether the individual has been convicted of a crime that involved sexual misbehavior but is not among the enumerated sex offenses. See *Doe, No. 15164*, 456 Mass. at 619. Where the initial and final

---

[10]We note that there is also nothing in the statute providing for review and approval of the regulations by the Legislature from which we might infer legislative confirmation that they are within the board's delegated rule-making authority. Compare *Pulsone* v. *Public Employee Retirement Admin. Commn.*, 60 Mass. App. Ct. 791, 797 (2004).

classification level must be grounded on a sex offense, the statutory language demands that any basis for initiating subsequent classification proceedings must also be grounded on conviction of a sex offense. See generally *Doe* v. *Attorney Gen.*, 426 Mass. at 144 (sex offender "has a liberty and privacy interest protected by the Constitution of the Commonwealth that entitles him to procedural due process"); *Doe, No. 1211*, 447 Mass. at 761 (registration must be "implemented in a fair manner"); *Doe, No. 941*, 460 Mass. at 341 (regulation that deems an offender to have waived his classification hearing and bars judicial review exceeds the scope of legislative authority).

The Commonwealth argues that because the board is statutorily required to update the sex offender database, which includes the offender's classification level, the regulation at issue, which permits the board to seek a modification of the offender's classification level, fulfils the board's obligation to update the database. G. L. c. 6, § 178D. In our view, that requirement relates to the various provisions of the statute that separately require registered offenders to notify the board of such matters as a change of address. See, e.g., G. L. c. 6, § 178E($h$). The Commonwealth's argument improperly converts the board's purely ministerial task of insuring that the information in the database is accurate to a substantive review of the classification.

The Legislature specified that a sex offender could only be classified upon conviction of a sex offense. Therefore we conclude that the board lacked authority to adopt regulations purporting to authorize it to declare that the classification level could be increased absent conviction of a new sex offense.[11] Given our conclusion that the increase in the plaintiff's classification

---

[11]We note that the issue presented in this appeal is limited to paragraphs (1) and (3) of 803 Code Mass. Regs. § 1.37C, which permit the board to seek an upward reclassification of a sex offender. The second paragraph of the regulation is directed to an offender's right to seek (a presumably downward) reclassification three years after his final classification. See, e.g., *Doe, Sex Offender Registry Bd. No. 15606* v. *Sex Offender Registry Bd.*, 452 Mass. 784, 795 (2008) (court approvingly cites to the ability of a level three offender to seek redetermination of his classification three years from the date of his final classification); *Doe, No. 1211, supra* at 790 (same).

While this paragraph also adds a further component to the statutory scheme, it balances the clearly articulated purpose of the legislation to protect vulnerable victims with the also clearly articulated constitutional rights of a sex

level was not validly obtained, we need not address the other issues raised by the plaintiff.

The judgment affirming the decision of the board is reversed, and the matter is remanded to the board for further proceedings.

*So ordered.*

offender. It provides the sole mechanism for protection of an offender's constitutionally based rights where the passage of time has reduced the risk of dangerousness such that the Commonwealth's interest in disclosure is eroded, properly permitting him to obtain a lower classification level. See *Doe* v. *Attorney Gen.*, 426 Mass. 136, 146-148 (1997) (Fried, J., concurring).

If the Legislature determines that the board should promulgate regulations permitting an upward reclassification of those offenders who are already subject to classification and registration, the Legislature is free to amend the statute.