Krupp, Peter B., J.
Since 2009, plaintiff John Doe No. 244384 (“Doe”) has been designated a Level 2 sex offender. He is awaiting a decision from a hearing examiner at defendant Sex Offender Registry Board (“the Board”) on whether his classification should be increased or decreased, or whether he should remain at Level 2. In light of Moe v. Sex Offender Registry Bd. (“Moe”), 467 Mass. 598 (2014), Doe seeks a preliminary injunction to restrain the Board from making his personal information available on the Internet if the hearing examiner decides Doe should remain at Level 2. For the following reasons, Doe’s motion is ALLOWED.
BACKGROUND
On January 9, 2003, Doe pleaded nolo contendere in Florida to one count of lewd or lascivious behavior in violation of Florida Penal Code §800.04(5)(c)(2). The Florida charge was based on conduct when Doe was 19 years old. After serving a sentence for the Florida offense, Doe moved back to Massachusetts.
In May 2009, the Board notified Doe that it had classified him as a Level 2 sex offender. Doe accepted that classification.
Six months later, in November 2009, the Board notified Doe that it had changed his classification to Level 3. Doe challenged the Level 3 designation. Following a de novo hearing, a hearing examiner found that Doe’s predicate sex offense in Florida was most analogous to the Massachusetts crime under G.L.c. 265, §13B (indecent assault and battery on a child under 14). Decision on Petitioner’s Appeal of Recommended Reclassification at 7-8 (Feb. 24, 2010). The hearing examiner also found that Doe presented “a moderate risk to reoffend and a moderate degree of dangerousness and order[ed] that he continue to reg *366 ister as a Level 2 sex offender.” Id. at 3. Again, Doe did not challenge this Level 2 classification.
With a Level 2 designation, Doe’s sex offender status was ascertainable by the public under controlled circumstances, but was not available on the Internet, as it would have been if he had then been designated as a Level 3 offender. See generally Moe, 467 Mass. at 603; G.L.c. 6, §178K(2)(c).
On July 12, 2013, the Legislature amended the Sex Offender Registry statute to require the Board to disseminate information about individuals classified as Level 2 on the Internet.[1] Moe, 467 Mass, at 603 & n.8. This change, if it applied to Doe, would have meant that Doe’s status would have been publicly available on the Internet. In Moe, however, the Supreme Judicial Court ruled that the new statutory directive to disseminate information about Level 2 sex offenders could not constitutionally apply to people finally classified as Level 2 on or before July 12, 2013. 467 Mass, at 615-16. Thus, under Moe, because Doe had been finally classified as Level 2 before July 12, 2013, he was not subject to the new law’s required Internet dissemination.
In early 2014, the Board again decided to seek to reclassify Doe as a Level 3 sex offender.[2] Again, Doe challenged the Board’s decision and requested a hearing. A de novo hearing was held on July 23, 2014. No decision has yet issued. The Board took the position at the hearing (and continues to maintain the position before me) that, notwithstanding Moe, if after the reclassification hearing petitioner remains at Level 2, he will nonetheless now be subject to Internet dissemination under the amended statute. The Board states its position succinctly: ‘The Board can seek to reclassify sex offenders to a higher level. . . and sex offenders can seek to be reclassified to a lower level... If the outcome of either of those proceedings is a level 2 after July 12, 2013, those offenders are subject to publication o[n) the Board’s website; regardless of what their level was before the reclassification proceeding.” Defendant Sex Offender Registry Board’s Opposition to Plaintiffs Emergency Motion for Preliminaiy Injunction to Stay Internet Dissemination Pending Declaratory Judgment Action [“Board Opp.”) at 7 (citations omitted). Doe challenges this interpretation.
The problem for Doe, however, is that Internet dissemination may be immediate after the hearing examiner renders a decision, even if the decision is that Doe should remain classified at Level 2. See 803 C.M.R. §1.04(4). Aware that Internet dissemination, and the harm that Doe could suffer as a result, could occur immediately after the hearing examiner’s decision without Doe having a chance to seek judicial review, Doe moved before the hearing examiner to delay dissemination if the hearing examiner decided he should remain at Level 2 so that he might challenge the Internet dissemination in court prior to dissemination. The motion was denied.[3] This action followed.
DISCUSSION
To obtain a preliminaiy injunction, Doe must establish (1) he is likely to succeed on the merits of his claim, (2) he will suffer irreparable harm absent the requested relief, (3) and his harm, without the injunction, outweighs the potential harm to the Board if the injunction is issued. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). When, as here, a party seeks to enjoin governmental action, I must also consider whether the requested relief will adversely affect the public. Tri-Nel Management, Inc. v. Bd. of Health of Barnstable, 433 Mass. 217, 219 (2001).
A. Likelihood of Success on the Merits
In Moe, the Supreme Judicial Court barred application of the 2013 Internet publication requirements retroactively to those individuals who had already been finally classified as Level 2 sex offenders when the statute was amended. The Court recognized that “the legal standard for the designation of a sex offender classification level under G.L.c. 6, §178K, interweaves the risk of reoffense and the degree of dangerousness with the level of notification appropriate to protect the interests of public safety.”[4] 467 Mass, at 615. It therefore held that retroactive application of the Internet dissemination requirement to those who the Board had previously decided were not dangerous enough to warrant Internet publication of their registry information “would be unreasonable and inequitable, and therefore unconstitutional as a violation of due process.” Id.
Notable for this case, the Court in Moe specifically enjoined the Board “from publishing on the Internet the registry information of any individual who was finally classified as a level two sex offender on or before July 12, 2013, unless the individual is subsequently reclassified a level two or level three sex offender. ” Id. at 616 (emphasis added). The Court did not explain what it meant by the term “reclassified”; specifically, whether such reclassification involved only a decision to classify an offender to a new level, or if it also included a decision not to change an offender’s classification from Level 2.
The Board interprets the “unless” clause highlighted above to mean that all people who face a hearing for reclassification to a higher level would now be subject to Internet publication of their registry information under the new law regardless of whether, after a hearing, the hearing examiner simply rejects the Board’s request to reclassify the offender to a higher level and leaves the offender classified at Level 2. This view is untenable on the merits and works a devious end run around Moe.
The Board has extraordinarily broad authority to seek reclassification. If the Board could implement Internet dissemination on every Level 2 sex offender who was classified at that level prior to July 12, 2013 simply by unsuccessfully seeking a reclassification to a higher level, the decision in Moe would mean little. *367 There is no mechanism under the sex offender registry law for the Board to reassess the propriety of a final classification decision. Rather, either the Board must seek a reclassification to a higher level, G.L.c. 6, §178L(3), 803 C.M.R. §1.37C(10), or the offender may seek reclassification to a lower level, 803 C.M.R. §1.37C(2). For an offender classified at Level 2, either successful petition would result in reclassification. On the other hand, if either petition is unsuccessful, the individual’s classification simply would not change. To say this is a reclassification strains the notion.[5] As the Board’s position does not comport with the Supreme Judicial Court’s holding in Moe, I find Doe has a reasonable likelihood of succeeding on the merits of this declaratory judgment action.
The Board argues that this matter is not yet ripe because the hearing examiner has not yet issued a ruling. It contends that if the hearing examiner determines that Doe should be reclassified to Level 1 or 3 the issue is moot. This is, of course, correct because at Level 1 there would be no Internet dissemination and at Level 3 dissemination would have been required even before the 2013 statutoiy amendments. What does not follow, however, is the proposition that, because we do not yet know whether Doe will remain at Level 2, the matter is premature before this court. The Board has tried once before to have Doe reclassified to a higher level. It was unsuccessful. For more than four years, Doe has been classified at Level 2. It is reasonably likely he will remain at that level (or drop to Level 1) after hearing. The problem with the Board’s analysis is that the Board may implement Internet dissemination immediately after the hearing examiner’s decision, even before Doe or his counsel receive notice of the hearing examiner’s decision. As a result, the irreparable harm that Doe seeks to avoid and that the Supreme Judicial Court has recognized as flowing from an Internet posting, see, infra, at 7-8, could not be otherwise avoided. Where Doe has sought a remedy through the administrative procedure (i.e. a stay of Internet dissemination pending judicial review), but has been unsuccessful, the matter is properly before the court.
B. Irreparable Harm to Doe
If the hearing examiner rebuffs the Board’s efforts to increase Doe’s classification to Level 3 and the Court denies Doe’s request for injunctive relief, the Board could (and refuses to agree not to) publish Doe’s registry information on the Internet immediately. Such dissemination would make it significantly easier for any individual to identify him as a registered sex offender. Currently, to obtain Doe’s registry information, an individual would have to identify himself and make a specific request for such information in a particular city or town. See G.L.c. 6, §§1781, 178J. In contrast, if Doe’s registry information was available on the Board’s website, any individual could easily access the information while remaining anonymous from the comfort of his/her own home. Moe, 467 Mass, at 605. Further, once this information is posted to the Board’s website, it may be reposted on another website, which does not include the same type of warnings that the Board must provide on its site. Id. This reposting also makes it easier for anyone to encounter Doe’s registry information, even unintentionally, through a simple Internet search. Id.
Public identification as a sex offender would likely cause Doe to suffer irreparable harm, “including the risk that. . . [he] will suffer discrimination in employment and housing, and will otherwise suffer from the stigma of being identified as a sex offender, which sometimes means the additional risk of being harassed or assaulted.” Id. at 604; see also Poe v. Sex Offender Registry Bd., 456 Mass. 801, 813 (2010), quoting Doe v. Attorney Gen., 426 Mass. 136, 144 (1997) (“[cjlassification and registration entail possible harm to a sex offender’s earning capacity, damage to his reputation, and most important. . . the statutoiy branding of him as a public danger” (internal quotations omitted)).
C. Balancing of the Equities
The Board and the public interest would suffer little, if any, harm if enjoined from posting Doe’s registry information on the Internet while this case is pending. While Doe’s registry information is currently not available online, his information may still be accessed through a specific request, as it has since 2009. It remains unclear whether Doe’s alleged changed circumstances, which the parties agree did not involve post-classification conduct, even warrant an increased classification level, which would make it necessary to publish Doe’s registiy information on the Internet to protect the public. Until the hearing examiner issues a decision, Doe remains classified as a Level 2 offender who at the time of his final classification did not pose enough of a danger to the public to warrant Internet publication. Although protecting vulnerable populations from a sexual offender is undoubtedly an important interest, the fact that Doe is already registered as a Level 2 and, as such his information is available to the public upon request, sufficiently safeguards the public from possible harm. The potential harm that Doe would suffer if the injunction is not imposed outweighs any harm that the Board or the public may suffer if the injunction is allowed.
ORDER
For the foregoing reasons, Doe’s motion for a preliminary injunction is ALLOWED.
The Sex Offender Registiy Board is hereby enjoined from disseminating Doe’s information on the Internet, or providing any greater access to Doe’s information than was available for Level 2 sex offenders prior to July 12, 2013.
*368 This Order shall expire twenty-one (21) days after issuance and service on Doe of the decision by the Board’s hearing examiner (hearing date July 23, 2014) on the Board’s request to reclassify Doe, unless further extended by the Court after motion.

The legislative amendments also substantially clarified and expanded the Board’s authorization to seek reclassification of persons listed on the sex offender registry. Prior to the 2013 amendments, the Board could only seek reclassification if a finally classified sex offender was convicted of a new sex offense. See Doe No. 16748 v. Sex Offender Registry Bd., 82 Mass.App.Ct. 152, 161 (2012). The new language added to G.L.c. 6, §178L(3) provides, in relevant part: “The board may, on its own initiative or upon written request by a police department or district attorney, seek to reclassify any registered and finally classified sex offender in the event that new information, which is relevant to a determination of a risk of re-offense or degree of dangerousness, is received. The board shall promulgate regulations defining such new information and establishing the procedures relative to a reclassification hearing held for this purpose.” (Emphasis added.) Pursuant to this provision, the Board promulgated regulations codified at 803 C.M.R. §1.37C(10). Those regulations, while providing specific examples focusing on changes in status which occur after an initial classification hearing, generally interpret the amended statute to give the Board almost limitless power to seek reclassification. In relevant part, the new regulations state: ‘The Board may, on its own initiative, seek to reclassify any registered and finally classified sex offender upon Receipt [sic] of any information that indicates the offender may present an increased risk to reoffend or degree of dangerousness. This could be based on, but not limited to, information indicating the sex offender has:
1. committed a new sex offense;
2. been terminated from sex offender specific treatment;
3. violated the terms or conditions of community supervision;
4. been incarcerated more than 60 consecutive days at any
time following his or her Final Classification;
5. failed to comply with the provisions of M.G.L.c. 6, §178C
through 178Q; or
6. demonstrated a lack of stability in his or her daily living." (Emphasis added.)

At argument, the parties told me that the Board sought to reclassify Doe based on new charges that involved alleged conduct in the early 1990s, which are now pending against Doe in juvenile court. See Roe v. Sex Offender Registry Bd., 466 Mass. 381, 391 (2013) (sex offender classification may be based on pending charges, which have not yet been adjudicated) . Whether reclassification may be based on events long before the initial classification hearing, which came to light afterwards, is not before the court.

Although these facts are outside the written record before me, both parties agreed to them at argument.

The Board’s challenge to this proposition in opposing the preliminary injunction motion is troubling. See Board’s Opp. at 6 (‘The Board was not and is not required to make any separate finding as to whether internet publication (or active dissemination) is warranted in any given case. By finally classifying this plaintiff as level 2 sex offender before the change in the law, the Board did not implicitly determine that internet publication was not necessary”). While the Board has set out standards for determining whether a sex offender should be classified in Level 1,2, or 3, it is difficult to conceive that the automatic consequence of the designation (e.g. Internet dissemination, or not) does not figure into the equation. Indeed, such considerations are baked into the Board’s determination under the statute itself. See, e.g., G.L.c. 6, §§178K(2)(a) (“Where the board determines that the risk of reoffense is low and the degree of dangerousness posed to the public is not such, that a public safety interest is served by public availability, it shall give a level 1 designation to the sex offender” (emphasis added)); 178K(2)(b) (“Where the board determines that the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information, it shall give a level 2 designation to the sex offender” (emphasis added)); 178K(2)(c) (“Where the board determines that the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination, it shall give a level 3 designation to the sex offender” (emphasis added) (eff. July 1, 2013)).

The regulations promulgated by the Board use the term “reclassification” in the context of a change in an offender’s classification from one level to another.