JOHN DOE[1] *vs.* POLICE COMMISSIONER OF BOSTON & others.[2]

Suffolk. May 2, 2011. - August 5, 2011.

Present: IRELAND, C.J., SPINA, BOTSFORD, GANTS, & DUFFLY, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act. Health Care Facility. Constitutional Law,* Sex offender. *Due Process of Law,* Sex offender.

This court concluded that G. L. c. 6, § 178K (2) (*e*), which prohibits a level three sex offender from establishing living conditions within, moving to, or transferring to a long-term care facility, infringed on the plaintiff sex offender's protected liberty and property interests and violated, as applied to him, his right to due process, in that the statute failed to provide for an individualized determination that the public safety benefits of requiring the plaintiff to leave the rest home where he resided outweighed the risks to the plaintiff of such a removal. [345-351]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on August 31, 2010.

The case was reported by *Cordy*, J.

*Ryan M. Schiff,* Committee for Public Counsel Services (*Beth L. Eisenberg,* Committee for Public Counsel Services, with him) for the plaintiff.

*Julie B. Goldman,* Assistant Attorney General (*Beatriz E. Van Meek & Nicole I. Taub* with her) for the defendants.

DUFFLY, J. The plaintiff is a level three sex offender currently residing in a rest home. Pursuant to a statute enacted by the Legislature in 2006, a level three sex offender who "establish[es] living conditions within, move[s] to, or transfer[s] to" a long-term care facility such as a rest home commits a crime. See G. L. c. 6, § 178K (2) (*e*), inserted by St. 2006, c. 303, § 6 (§ 178K [2] [*e*], or the statute). The plaintiff asks this court to declare § 178K (2) (*e*) unconstitutional as applied to him. We

[1]A pseudonym.

[2]The Attorney General and the sex offender registry board (board).

conclude that the statute infringes on the plaintiff's protected liberty and property interests and violates his right to due process; because the statute fails to provide for an individualized determination that the public safety benefits of requiring him to leave the rest home outweigh the risks to the plaintiff of such a removal, the statute is unconstitutional as applied to the plaintiff.[3]

1. *Facts and prior proceedings.* Concurrently with the proceedings in this case, the plaintiff requested and was granted a de novo hearing by the sex offender registry board (board) on his classification. On January 26, 2011, the board ordered that he register as a level three sex offender.[4] See G. L. c. 6, §§ 178C-178Q. We outline the relevant facts based on the findings of the board and other materials that have been included in the record.

In 2010, Boston police notified the plaintiff that, as a level three sex offender, he was precluded by law from living in the rest home where he currently resides.[5] In response, the plaintiff commenced a civil action pursuant to G. L. c. 231A, § 1, and G. L. c. 214, § 1, in the county court challenging the constitutionality of the statute. A single justice of this court issued a temporary restraining order enjoining the defendants from enforcing the provisions of the statute against the plaintiff, and reserved and reported the case.[6]

---

[3]While this case was under advisement, the plaintiff notified the court through counsel that due to his deteriorating health, he has been transferred out of the rest home and into a hospital. We exercise our discretion to reach the merits of the plaintiff's appeal regardless whether the matter may currently be moot, because the issues are significant and have been fully briefed and it is in the public interest to do so. See *Commonwealth* v. *Cory*, 454 Mass. 559, 560 n.3 (2009). We present the facts as set forth in the record.

[4]The plaintiff has filed a complaint for judicial review in the Superior Court challenging the board's determination. That review of his classification is pending; we do not address it in this decision.

[5]We cannot agree with the defendants' suggestion that because the Commonwealth has not, to date, initiated criminal proceedings against anyone, including the plaintiff, under the statute, we need not decide the constitutionality of the statute as applied to him. By the continued threat of prosecution, a figurative sword of Damocles hangs over the defendant; it forces him either to leave the rest home or to live in constant fear of prosecution and punishment.

[6]The defendants argue that because the factual record in the case is not fully developed, it was not properly reported under Mass. R. Civ. P. 64, as amended, 423 Mass. 1403 (1996). We do not agree. Rule 64 (a) provides that "a single justice of the Supreme Judicial Court may at any time reserve any question of law for consideration by the full court, and shall report so much of

The plaintiff is a single man who at the time of the proceedings before the board was sixty-five years old. He has been diagnosed with Asperger's disorder, a pervasive developmental disorder described by one doctor who examined him as characterized by marked impairments in social behavior and misperception of social cues. He suffers also from physical ailments including glaucoma and has a history of significant health problems, among them, heart attacks and a seizure disorder; another doctor noted his "disorganized communication" and poor personal hygiene.

As a result of two separate sexual offenses in 1992 involving young male children, the plaintiff was found guilty and incarcerated; following his release, he was reincarcerated for a 1997 parole violation that was not sexually motivated. Prior to the plaintiff's scheduled release in 2006, a petition seeking his civil commitment as a sexually dangerous person was filed in the Superior Court. Following a jury-waived trial, he was found not to be sexually dangerous, and released in January, 2008.

On his release, the plaintiff resided in a homeless shelter for approximately a year and, during that period, he was "mugged" several times. During the last and most serious attack, in late 2008, the plaintiff's eye socket was cracked and he was hospitalized. He was discharged from the hospital to a nursing home; in February, 2009, he was transferred to a rest home. The rest home, which is regulated by the Commonwealth as a long-term health care facility, has eleven elderly residents. Residents are generally admitted at the discretion of the rest home only after a referral and admissions screening conducted by several professionals associated with the rest home, including a licensed social worker. Staff at the rest home provide the plaintiff supervision with respect to activities of daily life. They are aware of his status as a level three sex offender.

The board described the rest home as providing a "stable environment" and considered this context a mitigating factor for the purposes of the plaintiff's classification. The board found that, as to the plaintiff, the rest home provides "physical,

the case as is necessary for understanding the question reserved." By its express terms, the rule gives a single justice broad authority to reserve and report a case. That authority is not contingent on the status of the factual record. We conclude that the single justice acted within his authority.

medical and social support which meets his many needs," and that, because he is "well liked and well adjusted there," his positive environment "could decrease [his] need for interaction with and gratification from children." The board also considered the plaintiff's age to be a mitigating factor. Weighing against these mitigating factors were aggravating factors considered by the board, including the age and sex of his victims, the brevity of his time in the community, and his lack of sex-offender treatment or counselling. The board concluded that the plaintiff's age and "current social stability" did not sufficiently mitigate his risk to reoffend and found that he presents a "high risk of reoffense and high degree of danger." The board acknowledged "that such a finding may in fact lead to a decrease in his support and stability,"[7] but nonetheless found that the facts "warrant broad community notification for the protection of children"[8] and ordered him to register as a level three sex offender.

2. *Discussion.* Effective December 20, 2006, § 178K (2) (*e*) subjects to criminal penalties any level three sex offender who moves to a rest home or other regulated long-term care facility. The statute provides:

> "No sex offender classified as a level [three] offender shall knowingly and willingly establish living conditions within, move to, or transfer to any convalescent or nursing home, infirmary maintained in a town, rest home, charitable home for the aged or intermediate care facility for the mentally retarded which meets the requirements of the department of public health under [G. L. c. 111, § 71]. Any sex offender who violates this paragraph shall . . . be punished . . . . Prosecutions commenced hereunder shall neither be continued without a finding nor placed on file."

---

[7]The board did not explain how its finding could "lead to a decrease in [the plaintiff's] support and stability." The board did, however, find that the plaintiff's "current circumstances," living in the rest home, "present a great deal of support and stability," and found factual support for the argument that the plaintiff "is currently enjoying the most supportive and stable environment of his adult life." We understand the board to be acknowledging that, in the context of G. L. c. 6, § 178K (2) (*e*) (§ 178K [2] [*e*], or the statute), the fact of the level three classification could disrupt his living situation, thereby upsetting a mitigating factor in his risk of reoffense and level of dangerousness.

[8]Nothing in the record suggests that any of his victims have included adults or elderly people.

G. L. c. 6, § 178K (2) (e). The statute applies uniformly to level three sex offenders; it allows for no exceptions. Id.

The plaintiff asserts a number of arguments in support of his claim that, as applied to him, § 178K (2) (e) is unconstitutional.[9] We need address only one: whether the prohibitions as to where the plaintiff may reside may be imposed absent an individualized determination that weighs the plaintiff's liberty and property interests against the rights of the Commonwealth to protect vulnerable members of society.

The parties' arguments are best understood in the light of our prior decisions discussing the sex offender registration scheme, and we therefore begin with a brief overview. The sex offender registration system applies broadly to those the statute defines as sex offenders, including those who have served their criminal sentences and those who have been found, following a trial, to be no longer sexually dangerous. See G. L. c. 6, §§ 178C–178K; G. L. c. 123A. Cf. *Opinion of the Justices*, 423 Mass. 1201, 1225 (1996) (earlier version of sex offender registration statute "imposes an entirely new system of consequences — potentially extremely burdensome — only on persons who have satisfied all the punitive measures applied to them in connection with a previous conviction"). We have determined that the act of registering, "in circumstances that serve the act's remedial purposes," will not necessarily constitute punishment in violation of the ex post facto clauses of the Federal and State Constitutions.[10] *Doe* v. *Attorney Gen.*, 426 Mass. 136, 137 n.3 (1997). See *Doe* v. *Attorney Gen. (No. 2)*, 425 Mass. 217, 220 (1997).

Nonetheless, we have recognized that significant liberty and privacy interests of sex offenders are implicated by the registra-

---

[9]The plaintiff argues also that the statute, as applied to him, violates what he claims are constitutionally protected, fundamental liberty rights to be free of serious dangers affirmatively created by the State, and to seek medically necessary care without undue interference from the State. Additionally, the plaintiff argues, by banishing him from appropriate housing in Massachusetts and placing him in peril of incarceration for moving into a rest home, the statute offends fundamental notions of human dignity and violates the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights.

[10]Prohibitions against ex post facto laws are contained in art. 1, § 10, of the United States Constitution and art. 24 of the Massachusetts Declaration of Rights.

tion law. See, e.g., *Poe* v. *Sex Offender Registry Bd.*, 456 Mass. 801, 813 (2010) (privacy interest); *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.*, 452 Mass. 764, 772 (2008), citing *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 790-791 (2008) (liberty interest). Before imposing the burden of registration, and being subjected to public dissemination of information about them, sex offenders are entitled to procedural due process protections that include the opportunity for individualized hearings to determine present sexual dangerousness or risk of reoffense, and the appropriateness of the risk classification. *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 91, 98 (1998). See *Roe* v. *Attorney Gen.*, 434 Mass. 418, 422-423 (2001). In *Coe* v. *Sex Offender Registry Bd.*, 442 Mass. 250, 257, 261 (2004), we held that the board's publication of level three sex offender information on the Internet does not violate art. 12 of the Massachusetts Declaration of Rights, and declined to enhance procedural due process protections beyond what already was being provided by the opportunity for individualized risk classification hearings.[11]

The prohibition contained in § 178K (2) (*e*), however, goes well beyond the registration and dissemination provisions we have said implicate substantial privacy and liberty rights of those convicted of sex offenses. The liberty and privacy rights at issue in this case are far more substantial. Cf., e.g., *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, *supra* at 781-782, 793.

But for the restrictions imposed by § 178K (2) (*e*), those who have been released from incarceration (and are not otherwise subject to supervision or restrictions, see G. L. c. 265, § 47, or committed to the Massachusetts Treatment Center as sexually dangerous persons, see G. L. c. 123A) are free to live where they choose and to move freely within and without the Commonwealth. See *Coe* v. *Sex Offender Registry Bd.*, *supra* at 258 ("Level three

---

[11]By contrast, we have concluded that imposition of lifetime community parole pursuant to G. L. c. 265, § 45, constitutes "an enhanced penalty for sex offenders," *Commonwealth* v. *Renderos*, 440 Mass. 422, 429 (2003), and thus "may not be imposed for conduct that had occurred prior to the law's enactment." *Commonwealth* v. *Talbot*, 444 Mass. 586, 597 (2005).

sex offenders are not prohibited from leaving their residences or places of employment, and are not restricted in traveling in and outside of the Commonwealth . . ."). See also *Commonwealth* v. *Weston W.*, 455 Mass. 24, 32-33 (2009) ("Massachusetts Declaration of Rights guarantees a fundamental right to move freely within the Commonwealth"). A restriction on the right to choose where one lives is a further imposition on the liberty interests protected by our State Constitution.

Because the plaintiff has an existing placement in a rest home that the State in effect threatens to take away from him, the statute implicates property interests as well. Cf. *Greene* v. *Lindsey*, 456 U.S. 444, 446, 456 (1982) (right to continued residence in government-subsidized housing is significant interest in property to which due process rights attach). These constitutionally based interests are further threatened when the limitation that forces a person to leave a rest home renders him homeless.[12]

Where a statute infringes on a constitutionally protected liberty or property interest, an individual is entitled to due process of law; how much process is due will depend on the magnitude of the deprivation. *Doe* v. *Attorney Gen.*, supra at 140. We described in *Roe* v. *Attorney Gen.*, supra at 427, the factors that must be considered in assessing whether the process afforded is sufficient:

> "Where there is an interference with a protected liberty interest, the court must consider 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' *Mathews* v. *Eldridge*, [424 U.S. 319, 335 (1976)]. See *Aime* v. *Commonwealth*, [414 Mass. 667, 675 (1993)] ('the individual interest at stake must be balanced against the nature of the governmental interest and the risk of an erroneous deprivation of liberty or property under the procedures which the State seeks to use')."

---

[12]As we noted recently in *Commonwealth* v. *Canadyan*, 458 Mass. 574, 577-578 & n.9 (2010), the "practical reality of homelessness" faces "an increasing number of former sex offenders."

As noted, the determination that the plaintiff is a level three offender, and thus has been found to pose a risk of further offense to the community at large, subjects him to the registration requirements and dissemination provisions of G. L. c. 6, §§ 178C-178Q. Section 178K (2) (*e*), however, seeks to impose additional curtailments on his liberty and privacy rights, as well as on his right to live where he chooses, solely on the basis of the plaintiff's level three classification. The statute presumes that all members of a class of sex offenders are dangerous to every community of rest home residents. It affords no opportunity for the plaintiff to demonstrate that he represents no or a minimal danger to the community the law is intended to protect and makes no provision for the necessary balancing of the plaintiff's individual circumstances against the Commonwealth's interest in protecting vulnerable elders from sexual assault. See *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 793 (2008).[13]

The United States Supreme Court has struck down as illegitimate certain "irrebuttable presumptions" where the "fit" was inadequate between a classification and the policy that the classification serves. See *Cleveland Bd. of Educ.* v. *LaFleur*, 414 U.S. 632, 644-648 (1974) (administrative convenience insufficient to justify irrebuttable presumption of physical incapacity among pregnant teachers); *Stanley* v. *Illinois*, 405 U.S. 645, 656-658 (1972) (irrebuttable presumption that unwed fathers are unfit parents did not serve State's goal of strengthening family ties). See also *Michael H.* v. *Gerald D.*, 491 U.S. 110, 120-121 (1989).

Here, the "fit" between the classification and the State's goals has not been sufficiently established. See *Michael H.* v. *Gerald D., supra*. Even assuming that some level three sex offenders in long-term care facilities pose a danger to other residents, others — perhaps especially those who have no history

[13]In *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 793 (2008), we considered the retroactive application of a civil statute. The plaintiff in this case does not contend that the statute applies to him on a retroactive basis. However, the balance of "opposing considerations," *id.*, mirrors the balancing of interests more generally required whenever the government deprives an individual of a constitutionally protected liberty or property interest. See *Doe* v. *Attorney Gen.*, 426 Mass. 136, 140 (1997). See also *Mathews* v. *Eldridge*, 424 U.S. 319, 334-335 (1976).

of assaults against adult victims — pose no particular danger to the population the policy aims to protect and are fully capable of contributing positively to rest home communities.[14] See *Cleveland Bd. of Educ.* v. *LaFleur, supra* at 645-646. In light of the further encroachment on the plaintiff's liberty and property interests imposed by the statute that places limitations on where he may reside, which is further heightened by his circumstances, the plaintiff must have an opportunity to establish that he poses minimal risk to the community the statute was intended to protect and, if removed from the rest home, will likely become homeless and expose himself to significant harm. Cf. *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd., supra.*

The defendants assert that the sex offender registration law already provides for individualized hearings in the context of classification. See G. L. c. 6, § 178L; 803 Code Mass. Regs. § 1.40(9)(c) (2002). Classification and reclassification procedures, however, are designed to assess the risk of reoffense and degree of dangerousness posed to the public for the purpose of determining whether and how the public should be informed about individual sex offenders. See G. L. c. 6, § 178K (1). Classification hearings balance sex offenders' liberty and privacy interests implicated by the acts of registration and dissemination of information about them against the need for the public to have information about dangerous sex offenders in order to protect vulnerable populations. See *Coe* v. *Sex Offender Registry Bd.*, 442 Mass. 250, 257-259, 261 (2004); *Doe* v. *Attorney Gen.*, 426 Mass. 136, 143 (1997). The plaintiff's classification hearings did not adequately address the heightened liberty and property interests implicated by § 178K (2) (*e*).

3. *Conclusion.* In order to protect his liberty and property interests in continued residence in the rest home — to which

---

[14]We accept the defendants' position that, in enacting the statute, the Legislature was motivated by public safety concerns associated with permitting level three sex offenders to live in a rest or nursing home with a vulnerable population. However, the defendants do not direct us to any research or authority in support of the assumption implicit in their argument: that sex offenders who pose a risk to children necessarily pose a risk to adults over the age of sixty years simply because both victims under the age of ten and victims over the age of sixty are included in the definition of "extra-vulnerable victim[s]" for the purposes of assessing the nature of past sexual offenses. 803 Code Mass. Regs. § 1.40(9)(c)(4) (2002).

he was admitted and where he chooses to live — the plaintiff is entitled to a meaningful opportunity to be heard before § 178K (2) (e) may be enforced against him.[15] Because the statute does not provide for, or permit, such an individualized determination, as applied to the plaintiff it violates due process of law under the Fourteenth Amendment to the United States Constitution and arts. 10 and 12 of the Massachusetts Declaration of Rights. The matter is remanded to the county court where a declaration shall enter stating that, as applied to the plaintiff, G. L. c. 6, § 178K (2) (e), does not comport with the due process clause of the Fourteenth Amendment and arts. 10 and 12, and cannot be enforced against him.

*So ordered.*

---

[15]Due process requires that an evidentiary hearing be conducted that would include assessment of the actual, rather than theoretical, risks posed by the plaintiff to the residents of the rest home; consideration of the impact on the plaintiff of removal from the facility; and weighing of these considerations against the impact on residents of the rest home whom the Legislature sought to protect through the enactment of § 178K (2) (e). Consistent with the purpose of the registration and notification laws, consideration would also have to be given to the public safety benefits and risks associated with applying the statute to a particular sex offender, including the increased likelihood of reoffense and degree of dangerousness associated with the loss of a stable living situation. See 804 Code Mass. Regs. § 1.40(12) (2002).