Wilkins, Douglas H., J.
This case concerns a Level II registered sex offender’s right to an adjudicatory hearing when he moves for reclassification into a lower risk category based upon an alleged long-term decline in his dangerousness. See 803 Code Mass. Regs. §1.37C(2) (2004) (“Offender’s Motion for Reclassification”). In his amended complaint, the plaintiff (referred to herein by the pseudonym, “Doe”) seeks a declaration under G.L.c. 231A that the state and federal constitutions, read in conjunction with G.L.c. 30A, §1(1), prohibit the defendant, Sex Offender Registry Board (“SORB” or “Board”), from denying an adjudicatory hearing when it considers a sex offender’s motion for reclassification. Doe also requests judicial review under G.L.c. 30A, §14, to vacate the SORB’s letter dated September 22, 2010 (“2010 Decision”) denying his motion for reclassification.
During prior proceedings in this case, the court preliminarily resolved these issues for jurisdictional purposes. On March 18, 2011, it denied the SORB’s Motion to Dismiss Pursuant to Mass.R.Civ.P. 12(b)(1), ruling that the Superior Court has jurisdiction under G.L.c. 30A, §14, because the plaintiff, a registered sex offender, had a right to an adjudicatory hearing on a request for reclassification and therefore may obtain judicial review of the SORB’s decision denying his request. Doe v. Sex Offender Registry Bd., 28 Mass. L. Rptr. 159 (Mass.Super. 2011) (“Jurisdictional Decision”).
Pursuant to Superior Court Standing Order 1-96 as amended, the SORB filed an administrative record which (not wanting to waive its position that this is not a c. 30A case) it entitled: “Sex Offender’s File As Reviewed By the Sex Offender Registry Board in Contemplation of Offender’s Motion for Reclassification.” For ease of reference, the court will refer to that filing as the “Record” (“R”). The plaintiff moved for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) and the standing order. The SORB opposed the motion, cross moved for judgment on the pleadings and renewed its motion to dismiss. On October 28,2011, Doe filed an assented-to motion to amend the complaint, adding the declaratory judgment count.
*442 The court heard oral arguments on the pending motions on May 22, 2012, at which the SORB requested the opportunity to introduce additional facts on the declaratory judgment claim. It entered a procedural order on July 2, 2012, directing the parties essentially to follow Superior Court Rule 9A to establish any additional facts that might bear upon the declaratory judgment claim. On September 17, 2012, the parties filed their supplemental memoranda and statement of additional facts. The court held a second oral argument on September 27, 2012 to discuss the supplemental materials. The entire case is now ready for resolution.
BACKGROUND
Facts Established in the Administrative Record
Doe is a convicted sex offender who resides in Massachusetts. He was arraigned on November 28, 2000 and later convicted in a jury-waived trial on one count of disseminating pornographic materials to his 13-year-old nephew in violation of G.L.c. 272, §28. On the lead indictment for indecent assault and battery on a child under the age of 14, however, the court found him not guilty. He was sentenced to and served eight months in the Billerica House of Correction and was sentenced to eight years probation. The probation was terminated on December 31, 2007. The Record contains Doe’s criminal history, which reflects no subsequent convictions or criminal charges.
After an adjudicatory hearing on July 2, 2003, the SORB classified Doe as a Level II offender. The Hearing Officer’s decision, dated July 29, 2003 (“2003 Decision”) is among the items included in the Record. Under the heading “Other Sex Offense Information,” the 2003 Decision found by a preponderance of evidence that Doe actually committed the offense on which the criminal court, using a more demanding standard of proof, had found him not guilty. The Hearing Officer noted that the court required Doe to undergo a sex offender evaluation and treatment and that probation records indicated that he must undergo an evaluation and treatment “if deemed necessary.” For that purpose, Doe in fact saw Dr. David B. Doolittle, who opined that Doe did “not present characteristics of pedophilia” but exhibited fetishistic behavior that “did spill over into other experiences . . . with a teenager.” Dr. Doolittle recommended treatment for sexual compulsives, “such as is offered at the New England Forensic Associates [NEFA].”
Doe was then evaluated by Dr. Carol Ball, Ph.D., co-founder and owner of NEFA, who stated in a written report and in live testimony at the 2003 hearing that Doe “does not meet the criteria for a sexually compulsive disorder and I find no evidence that he has a sexual perversion such as a fetish and that upon further examination, Dr. Doolittle’s impressions that he ‘presents a sexualized pattern involving fetishistic behavior’ is not born out.” She stated that she “do[es] not believe that [Doe] is in need of sex offender specific treatment.” The Hearing Officer credited Dr. Doolittle’s report, rather than Dr. Ball’s report and testimony. The present Record does not include any transcripts of the live testimony or any of the reports considered by the Hearing Officer in 2003. The court concludes that the Board did not consider those primary sources in ruling upon the motion for reclassification. Cf. Douglas Envtl. Assocs., Inc. v. Dep’t. of Envtl. Prot, 429 Mass. 71, 74-75 (1999) (noting that the administrative record “consistís] of any document or material that the agency decision makers directly or indirectly considered . . .’’).
The Hearing Officer found that Doe presented a “moderate risk of reoffense and degree of dangerousness.” While she recognized a number of positive factors, she relied upon “his repetitive and compulsive behavior against a male victim, a 13-year-old child, the lack of sex offender treatment, his denial of any wrong doing, . . . the impact his conduct had on the victim and his family, the lack of any intervening factors to suggest that anything has changed since his conviction and the minimal time he has been at liberty since his release . . .” Near the end of the 2003 Decision, the following standard disclaimer appears: “The Board recognizes that the risk to reoffend and the degree of dangerousness posed by a sex offender may increase or decrease over time... In three years, [Doe] may be a candidate for an administrative review by the Board to determine the appropriateness of reclassifying his level.”
On March 22, 2010, Doe’s attorney sent a letter to the SORB, requesting relief from classification. By that time, Doe was 46 years old. Among other things, the letter stated that it “should serve as my formal notice and request for the setting up of a Hearing for purposes of presenting evidence which we believe, in good faith, should compel the Board to consider favorably [Doe’s] application for reclassification and potentially for relief from the obligation to report as a sex offender." As directed by 803 Code Mass. Regs. 1.37C(2)(g), the Board did not convene an evidentiary hearing.
The Record includes two updated Victim Impact Statements received on June 20, 2010, one from the victim’s mother and the other from the victim’s licensed clinical psychologist. Both statements describe painful, deleterious and ongoing effects upon the victim from Doe’s actions. The Record does not reflect whether Doe or his attorney received copies of these materials. The attorney’s letter to the Board does not reflect an awareness of them, and Doe’s filings in court contest their reliability.
The Record also reflects an inquiry, dated March 29, 2010, to the local Police Department for information regarding Doe’s request for reclassification. No response or other input from the police appears.
On August 6, 2010, the Board sent Doe a letter denying the motion for reclassification. The only case- *443 specific statement in the letter was: “The Board has considered the nature of the sex offense, absence of sex offender treatment and time in the community.”
Doe’s attorney responded with a letter dated September 2, 2010, in which he expressed his understanding that he had until September 15, 2010 to submit documentation. The letter cited Doe’s successful probation and urged the Board to consult with the probation department. It referred to the prior sex offender treatment evaluation and the live testimony in 2003. It provided information regarding Doe’s seven-year-long integration into the community and lack of subsequent offenses. Included in the package was a written statement from Mr. Doe, his résumé and licenses.
In response, the 2010 Decision again denied the motion for reclassification, although it eliminated the reference to the “absence of sex offender treatment” and added the adjective “serious” to describe the sex offense. The case-specific sentence in the 2010 Decision stated: “The Board has considered the serious nature of your sex offense and the time you have been in the community.”
Additional Facts Established for Declaratory Judgment Purposes
While Doe disputes the SORB’s position on the merits and stands by his initial arguments, his filing of August 31, 2012 expressly reports that he does not dispute or object to the SORB’s statement of additional facts bearing upon the declaratory judgment claim. Those uncontested facts are as follows.
As of July 2012, there were 12,815 sex offenders finally classified as level II and level III sex offenders. There were also 3,959 sex offenders finally classified as level I offenders at that time. Of the 12,815 level II and level III sex offenders, 2,839 were classified within the past three years.
In 2011, there were 397 requests for downward reclassification. In 2011, 230 offender-initiated reclassification requests were processed and sent to the Board for consideration; 167 were “screened out.” From January to July 2012, there were 208 reclassification requests for downward reclassification. From January to July 2010, 120 requests for downward reclassification were processed and sent to the Board for consideration; 88 were “screened out.”
At the oral argument, counsel for the Board explained that “screened out” meant that the request did not meet minimum criteria for submission, such as being premature under the Board’s three (or five) year waiting period or lacking any supporting information. Counsel also pointed out that a request may have been initially screened out but resubmitted later, after complying with the regulations, and therefore may also be included within the numbers processed and sent to the Board.
DISCUSSION
I.
In his c. 30A appeal, Doe alleges that the SORB’s action was arbitraiy and capricious, the 2010 Decision reflected improper influence of those who prosecuted him criminally in 2000 and the SORB was prejudiced against him despite the unique facts of the case. His amended complaint also alleges that he was denied his right to a hearing.
A. Standard of Review
When reviewing an agency decision, the court must give “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7)(2001). This court may reverse, remand, or modify an agency decision if the substantial rights of any party may have been prejudiced because the agency decision is based on an error of law or on unlawful procedure, is arbitraiy and capricious or unwarranted by facts found by the agency, or is unsupported by substantial evidence. G.L.c. 30A, §14(7)(c)-(g). Doe 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 632-33 (2011). The appealing party bears the burden of demonstrating the invalidity of the agency decision. See Bagley v. Contributory Ret. Appeal Bd., 397 Mass. 255, 258 (1986). The plaintiffs “burden is heavy.” Springfield v. Dep’t of Telecomms. & Cable, 457 Mass. 562, 568 (2010) (citation omitted).
A decision is arbitraiy and capricious if it is unreasoned and is made willfully “without consideration and in disregard of facts and circumstances.” Long v. Comm’r of Pub. Safety, 26 Mass.App.Ct. 61, 65 (1988) (citation omitted); see Doe 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 622-23 (2010). “In reviewing the [Board’s] decision (the court’s] standard is ‘to determine whether the agency conformed with the controlling statute.’ ” Tarin v. Comm’r of the Div. Med. Assistance, 424 Mass. 743, 750 (1997) (citation omitted). The court must determine whether the Board “gathered, identified, and applied” the facts logically to the statutory standards and had sufficient reasonable grounds to support its decision to classify the plaintiff as a Level II sex offender. See Allen v. Boston Redev. Auth., 450 Mass. 242, 254, 259 (2007) (citations omitted) (discussing arbitraiy and capricious standard).
B. Arbitraiy and Capricious Decision-making
On reclassification, the sex offender must prove, among other things, “that his risk of reoffense and the degree of dangerousness he poses to the public has been reduced . . .” 803 Code Mass Regs. §1.37C(2)(e). Neither the 2010 Decision nor the Board’s earlier letter mentions this test in words nor applies it in substance. Nor do they refer to the updated information in the Record, which is the focus of the reclassification process.[1] The court should not, however, insist upon a particular phrase or language, as long as the Board’s *444 actions otherwise pass muster under the arbitrary and capricious test. It is also true that the Board’s only explanation — "the serious nature of your sex offense and the time you have been in community" — would apply to every reclassification, since all registered sex offenders committed serious enough offenses to warrant classification and have all been in the community for at least five years. See 803 Code Mass. Regs. §1.37C(d)(2). Still, that, by itself, does not get the plaintiff over the very high hurdle of the arbitrary and capricious test.
The problem is what the Board actually did say. The “serious nature of [the] sex offense” matches no regulatory criterion. It is true that the reclassification process does not revisit prior findings on the static factors such as the nature of the sex offense.[2] It is also true that nothing prohibits the Board from considering static factors on reclassification, and it sensibly does so. The regulations, however, dictate which static aspects of the sex offense have predictive value, including whether the offense was violent, involved a weapon, involved an under-aged or familial victim, evidenced repetitive or compulsive behavior and the like. 803 Code Mass. Regs. §1.40(2), (3), (7), (8). Research cited in the regulations themselves supports a connection between those aspects of the sex offense and future dangerousness or recidivism. The SORB’s 2003 Decision relied upon such factors, even citing (at 23; R. 46) one aspect of the crime (intrafamilial victim) among the “positive factors” for predictive purposes. See 803 Code Mass. Regs. §1.40(7). For good reason, it never made a finding of a “serious nature.” The Board has articulated scientifically-based predictive factors, with precise definitions, in 803 Code Mass. Regs. §1.40 to ensure that assessments of future dangerousness and risk of recidivism have a scientific basis. Neither the statute, nor the reclassification regulations support classification based upon such a broad and judgmental concept as a sex offense’s “serious nature.” That concept is more suited to a system of punishment than one of assessing and regulating potential future dangerousness.
The “time you have been in community” rationale presents a different problem. The phrase itself finds support in 803 Code Mass. Regs. §1.40(9)(a) (“Factor 9(a)”), but that regulation also states: ." . . Studies have shown that the likelihood of recidivating decreases for most offenders after the first five to ten years following release from incarceration and becomes substantially lower after ten years in the community (Epperson et al., 2000; Hanson & Thornton, 2000; Prentky et al., 1997.)." 803 Code Mass. Regs. §1.40(9)(a). Doe was in the first year of release when he came up for initial classification in 2003, leading the Hearing Officer to count against him “the minimal time he has been at liberty since his release ...” 2003 Decision, p. 23 (R. 46). By 2010, that had changed; “the time [he had] been in the community” between the offense and the reclassification request without any reoffense was almost seven years, moving into a “decrease [d]” risk category according to the terms of Factor 9(a).[3] Also relevant to Doe’s situation in the community on reclassification was Factor 12, which views a positive home environment as a “minimizing” factor. 803 Code Mass. Regs. §1.40(12). The 2010 Decision appears to have ignored Doe’s evidence on the point. Time spent in the community also relates to Factor 20, addressing recent behavior while on probation. 803 Code Mass. Regs. §1.40(20).[4] According to the Record, Doe had no difficulties complying with the terms of his probation, which terminated well before the Decision. It follows that the time Doe spent in the community was a plausible (though not necessarily conclusive) ground for granting reclassification, but not a rational explanation for denial.
The SORB’s memo (at 10) treats stability over seven years as a mere lack of changed circumstances.[5] It then uses the lack of change over time to argue that Doe remains equally dangerous and that there is therefore no need to change the classification. These are topsy-turvy arguments that the Board itself did not make explicitly,[6] but which accurately mirror its approach. They directly conflict with the principle that 803 Code Mass. Regs. §1.37C(2) protects constitutional rights “where the passage of time has reduced the risk of dangerousness . . .” Doe 16748 v. Sex Offender Registry Board, 82 Mass.App.Ct. 152, 163 n.11 (2012). See also 803 Code Mass. Regs. 1.37C(1), (2). The whole point of reclassification is to assess the significance of all circumstances and events that occur during the post-classification years. Years spent at liberty without reoffending are, per se, new circumstances that the Board must consider. A stable home environment and employment situation, the lack of additional negative conduct and completion of probation are desirable and, under the regulations and supporting research, if sustained over time, are associated with a reduced risk of reoffense. See 803 Code Mass. Regs. §1.40(9)(a), (12), (20), and research cited. These factors therefore cannot be a rational ground for denying reclassification.
Finally, it may be significant that the 2010 Decision omitted the reference to “absence of sex offender treatment” that appeared in the earlier letter denying reclassification. Along with the “minimal time” Doe had spent in the community, “the lack of sex offender treatment” was one of the factors leading to the initial Level II placement in 2003. Elimination of that concern, as urged in the letter of Doe’s counsel, again reduced the risk in 2010 compared that found in 2003.
The Board’s failure to frame its decision in terms of the applicable test for reclassification (which it never quoted or cited), the reference to an incorrect and over-stated standard (“serious nature”), its reliance upon a factor (Factor 9(a) (time in the community)) that appeared to reduce risk, the failure to acknowledge the petitioner’s facts and its recognition that sex offender *445 treatment was no longer needed establish that the 2010 Decision was arbitrary and capricious. The 2010 Decision failed to gather, identify and apply the facts logically to the statutory standards. See Doe 151564, 456 Mass. at 622-23 (it was arbitrary and capricious to issue a decision without considering relevant evidence).
C. Violation of Constitutional Provisions and Unlawful Procedure
There is an independent ground for decision. For reasons articulated in the Jurisdictional Decision and discussed more fully below, denial of an adjudicatory hearing was “(i]n violation of constitutional provisions” and “(mjade upon unlawful procedure.” G.L.c. 30A, §14(7)(a), (d). With an adjudicatory hearing comes the requirement for findings of fact sufficient to enable judicial review, which the Decision’s two phrases do not fulfill. See G.L.c. 30A, §11(8); Somerset Imps, Ltd. v. Alcoholic Beverages Control Comm’n, 28 Mass.App.Ct. 381, 386-87 (1990). The requirement of “detailed” findings is among the safeguards provided as a matter of due process during initial classification. Doe 3844 v. Sex Offender Registry Bd., 447 Mass. 768, 776 (2006). The SORB claims, without citing case law, that the court lacks authority to vacate the 2010 Decision on these grounds because the Board itself made no error, given its duty to apply its regulations.
The Board’s argument goes as follows: (1) the Board’s regulations provide that “[t]he Full Board shall decide the motion on the materials submitted and shall not schedule a hearing on the motion,” 803 Code Mass. Regs. §1.37C(2)(g); (2) the Board did not have the “inherent authority to strike down the regulation or declare it void” (Doe 16748, 82 Mass.App.Ct. at 155-56 and cases cited); and (3) an error by the Board is a prerequisite to the court’s authority to vacate the 2010 Decision under G.L.c. 30A, §14(7). The third prong of this argument is wrong. The focus of §14(7) is not whether the Board had good reasons for denying a hearing, but on whether “the substantial rights of any party may have been prejudiced because the agency decision is (a) [i]n violation of constitutional provisions; or . . . (d) [m]ade upon unlawful procedure . . .” The language of §14(7) contains no additional requirement that the Board’s procedural reasoning be erroneous. Even if the Board’s limited inherent authority gave it good reason to follow its invalid regulations, an agency decision may — as here — "violat[e] constitutional provisions" or result from “unlawful procedure.” Id. If the court lacked jurisdiction to rectify these errors, an agency could avoid judicial review by adopting a regulation requiring it to violate the Constitution. The Board’s attempt to use its regulation in that way is preempted by G.L.c. 30A, §14(7).
The SORB also argues that the court cannot review the Decision under §14(7), because, even if Doe had a right to an adjudicatory hearing, the Board did not conduct one. Section 14, however, applies to an “adjudicatory proceeding.” The definition of “adjudicatory proceeding” in G.L.c. 30A, §1(1) turns on whether “an agency hearing” is “required,” not whether it happened. Otherwise, an agency could defeat the right to review by unlawfully denying an adjudicatory hearing, leaving the aggrieved party without meaningful recourse at both the administrative and judicial levels.
II.
The Amended Complaint added a claim under G.L.c. 231 A, asking the court to declare that it has jurisdiction to review the 2010 Decision. Subsumed in that request is the assertion that Doe had a right to an adjudicatory hearing on his motion for reclassification. An “actual controversy” within the meaning of G.L.c. 231 A, §§1,2 unquestionably exists: the SORB has treated the Amended Complaint as raising that due process issue; Doe remains subject to classification; he will have a right to file another motion for reclassification in 2013; he challenges SORB practices and procedures set forth in a regulation; and the case must be remanded in any event. The alleged right to a hearing on reclassification therefore raises a question suitable for declaratory relief.
In arguing that the Jurisdictional Decision erred by finding a constitutional right to a hearing, SORB returns to first principles, namely the procedural due process test set forth in Doe 3844, 447 Mass. at 775, quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976):
Three factors must be weighed in determining procedural due process: “First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including... the fiscal and administrative burdens [involved].
The first Mathews factor presents relatively little difficulty. Doe 3844, 447 Mass. at 775 (“Considering the first and second factors of the test, the plaintiffs interest in this case is weighty...”). See also Doe 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 790-92 (2008). It is well settled that, with respect to registration and dissemination under the sex offender registry laws, “an offender has a liberty and privacy interest protected by the Declaration of Rights of the Commonwealth . . .” Doe 16748, 82 Mass.App.Ct. at 159; see also Jurisdictional Decision, 28 Mass. L. Rptr. at 161. The courts have held that that this interest entitles him “to procedural due process before he may be required to register and before information may properly be publicly disclosed about him.” Id., citing Doe v. Attorney Gen., 426 Mass. 136, 143 (1997); see Doe v. Police Comm’r. of Boston, 460 Mass. 342, 346-47 (2011). “In other words, the entire process must be ‘implemented in a fair manner.’ ” Doe 16748, 82 Mass.App.Ct. at 159, quoting Doe 1211 v. Sex Offender *446 Registry Bd., 447 Mass. 750, 761 (2006), quoting Aime v. Commonwealth, 414 Mass. 667, 674 (1993).
The Board acknowledges this principle as applied to initial classification, but claims that an offender’s motion for reclassification involves no constitutionally protected interest. Yet, after the initial classification and dissemination of information, the Commonwealth does not stop regulating the offender. The combination of five circumstances that convinced the Supreme Judicial Court “that the plaintiff has a liberty and privacy interest protected by the Constitution of the Commonwealth” persist at least through reclassification. See Doe, 426 Mass. at 144. Those circumstances are: (1) Doe must register; (2) his personal information is disclosed on request; (3) Doe suffers possible harm to his earning capacity; (4) his reputation is harmed; and (5) “most important” the Commonwealth “brand[s] . . . him as a public danger, a sex offender.” Id. “Registration represents a continuing, intrusive and humiliating regulation of the person himself.” Doe 972 v. Sex Offender Registry Bd., 428 Mass. 90, 101 (1998) (emphasis added), quoting Doe, 426 Mass. at 149 (Fried, J., concurring). The registrant does not lose constitutional protection for his liberty and privacy interests simply because the Board has previously regulated him.[7]
SORB’s argument is also inconsistent with recent authority. The Appeals Court has recognized the legislative balancing of “the clearly articulated purpose of the legislation to protect vulnerable victims with the also clearly articulated constitutional rights of a sex offender” in the context of the reclassification regulation at issue here, 803 Code Mass. Regs. §1.37C(2). Doe 16748, 82 Mass.App.Ct. at 162-63, n.11 (emphasis added). In that footnote, albeit in dicta, the court specifically recognized the “offender’s constitutionally based rights where the passage of time has reduced the risk of dangerousness such that the Commonwealth’s interest in disclosure is eroded, properly permitting him to obtain a lower classification level.” Doe 16748, 82 Mass.App.Ct. at 162-63 n.11, citing Doe, 426 Mass. at 146-48 (Fried, J., concurring). It is telling that the Appeals Court cited Justice Fried’s concurrence, which emphasized the constitutional right to be free from unlawful post-sentence punishment in the guise of sex offender regulation. That is exactly the point. If the constitutional freedom from such punishment means anything, it does not vanish upon initial classification.[8]
The Board also contests the second Mathews factor. “Considering the... second factor of the test, the risks associated with an erroneous classification would result in the dissemination of his registration to the public.” Doe 3844, 447 Mass. at 775. The Board contends, however, that the lack of an adjudicatory hearing does not result in a constitutionally impermissible risk of over-classification. That is not the determinative question, because G.L.c. 30A, §1(1) requires an adjudicatory hearing if due process requires any type of hearing. See Jurisdictional Decision, 28 Mass. L. Rptr. at 162, citing cases, including Doe 972, 428 Mass. at 98-99. That test is certainly met.
In any event, predicting the likelihood of sexual re-offense and assessing sexual dangerousness are extremely difficult tasks, even for an expert agency after a full hearing. Unlike a review medical and mental records to determine existing disability for purposes of awarding Social Security benefits (as in Mathews, 424 U.S. at 343-44), the ability to predict future dangerousness benefits from the opportunity to observe the person whose classification is at issue, .to question experts, and to hear the parties challenge the opponent’s evidence. Assessing an individual’s risk of sexual recidivism on an old, cold record is fraught with potential for error, because the facts may be contested, credibility issues arise both as to expert opinion and lay observation and “the risk to reoffend and the degree of dangerousness posed by a sex offender may increase or decrease over time.” §803 Code Mass. Regs. 1.37(1); see 803 Code Mass. Regs. §1.40, 9(a), 22, 24. It is hazardous to rely upon a Hearing Officer’s decision based upon an expert’s seven-year-old opinion — even where, as here, the opinion was honestly held and credited by a hearing officer at the time as being more reliable than a contrary expert opinion — because the expert may well change that opinion at the time of reclassification after considering the new information from the intervening years. After all, expert input supports the statement in the Board’s regulations that “the risk to reoffend and the degree of dangerousness posed by a sex offender may increase or decrease over time.” §803 Code Mass. Regs. 1.37(1). It is also true that, even without a change in the expert’s opinion, the fact-finder might weigh the opposing opinions differently in light of the intervening facts that tend to conform to one prediction and not the other.
While the Record in this case may not be representative, it is at least illustrative. It contains no report or other evidence analyzing the significance of the seven years that Doe has spent offense-free and at liberty since the original offense. There is no evidence regarding the continued predictive significance, if any, of the original sex offense. The Record includes none of the original expert reports and testimony, let alone any update of those opinions or even a retrospective analysis of the relative credibility and predictive power of the two experts’ opinions in light of Doe’s subsequent clean track record. If the Board continues to rely upon the 2003 expert reports, cross-examination to supplement and explore the continuing validity of those reports in light of seven years of history would be invaluable. Moreover, neither the Record nor the Board’s regulations discusses Doe’s increased age, which is material but has not been addressed by expert testimony. Cf. Doe 151564, 456 Mass. at 622-23 (2010) (“[bjecause Doe was sixty-one at the time of *447 the hearing, it was arbitrary and capricious for the board to classify Doe’s ‘risk of reoffense and degree of dangerousness,’ . . . without considering this evidence”), quoting G.L.c. 6, §178K(1).
There are other problems. Doe raises disputes of fact in the Record which, if applied to current dangerousness, would ordinarily call for adjudicatory treatment. A hearing officer would make rulings on admission or exclusion of contested evidence and thereby give notice to the parties (and the court) of the scope of its factual inquiry. The paper review does none of that. Moreover, Doe claims that a person involved in prosecuting the charges against him in 2000 was also involved in denying the reclassification, allegedly motivated by her disappointment about the court’s not guilty finding on the more serious charge. Nothing in the Record supports or refutes that claim, but that is to be expected during a paper review, where staff involved in advising the Board are not identified. In an adjudicatory hearing, the decision-maker is clearly identified and can be challenged for bias or other disqualifying fact. Finally, while the SORB’s 2010 Decision omitted the phrase “absence of sex offender treatment,” it appears to have done so only because of Doe’s attorney’s letter.[9] The SORB’s apparently well-justified correction of its initial error on the sex offender treatment issue in this case suggests a potential for errors in other cases caused by misreading the paper record.
Finally, an adjudicatory hearing can help the Board stick to its statutory mission. The SORB is not a super-parole board, a second sentencing court or a forum authorized to award compensation. A face-to-face meeting has intrinsic value for the decision-maker and all persons exercising the right to be heard; it helps focus the decision-maker upon the people involved and the task at hand: evaluating the circumstances of the specific person being classified to determine the level of present and future dangerousness. These considerations may or may not have a constitutional basis, but likely underlie the requirement of an adjudicatory hearing in G.L.c. 30A, §1(1).
On the third Eldridge factor, the SORB claims that the administrative burden of conducting adjudicatory hearings “will be overwhelming.” As with the second factor, this argument conflicts with the mandate of G.L.c. 30A, §1(1), for an adjudicatory hearing as long as the Constitution requires any fype of hearing. The SORB does provide some kind of hearing — a written review as in Eldridge — and has no right to challenge the legislature’s decision to provide a full adjudicatory hearing instead.
In any event, the SORB’s argument proceeds on the implausible assumption that it would not amend its regulations by, for instance, relieving the full Board of deciding each motion, instituting pre-hearing procedures akin to summary judgment, imposing upon applicants the duty to request an adjudicatory hearing if desired (G.L.c. 30A, §10(1)), use of hearing officers and other potential regulatory changes, based upon reliable studies, to facilitate uniform and equitable resolution of reconsideration motions. With such procedures in place, reclassification requests that currently succeed at the pre-hearing stage need not cost a penny more in the future. The Board’s additional facts do not reveal how many such reclassifications occur. Moreover, reclassifications granted after a hearing may obviate the need for consideration of those offenders’ classifications in future years, resulting in future savings, which the SORB has not considered. The SORB’s papers also disclose a substantial number of sex offenders for whom the Board has sought higher classification under 803 Code Mass. Regs. §1.37C(1), (3), for which the Board has found resources, despite the arguable illegality of some of those sua sponte reclassifications. [10] Finally, the SORB assumes that its present practices result in legally defensible decisions, but Part I above shows that this is not always true. It has not factored in the cost of meeting its existing regulations or of revisiting decisions found to be arbitrary and capricious, in violation of the constitution or made upon unlawful procedure.
Finally, the SORB’s purely financial view of the governmental interest in a paper review is too narrow. The government has a recognized interest in accurate notifications to the public. There is no legitimate purpose served by disseminating old information that has become inaccurate or by creating needless public anxiety when the danger level has declined. Stale information may divert attention from risks that are more serious and present. The additional cost of getting it right will promote the public interest in a reliable sex offender registry system.
It follows that Doe had a constitutional right to a hearing and therefore to an adjudicatory hearing pursuant to G.L.c. 30A, §1(1).
ORDER
For the above reasons, The Court ORDERS AND ADJUDGES THAT FINAL JUDGMENT SHALL ENTER AS FOLLOWS:
1. The plaintiffs Motion for Judgment on the Pleadings is ALLOWED.
2. The Board’s letter dated September 22, 2010 is VACATED and REMANDED for further proceedings consistent with this decision;
3. The Court declares that the Massachusetts and Federal Constitutions and G.L.c. 30A, §1(1) entitle registered sex offenders to an adjudicatory hearing on motions for reclassification that meet the objective prerequisites for relief under 803 Code Mass. Regs. 1.37C(2) and present factual support that, if believed, would warrant reclassification, notwithstanding the phrase in 803 Code Mass. Regs. 1.37C(2)(g), “shall not schedule a hearing on the motion," which is declared unconstitutional and *448 statutorily preempted as to motions for reclassification that otherwise comply with the Board’s regulations.

 The reclassification regulations specifically seek information on a number of the dynamic factors that govern classification, found at 803 Code Mass. Regs. §1.40. The relevant portions of 803 CMR 1.37C concerning reclassification criteria provide:
(c) Consideration of motions for reclassification shall be limited to new and updated information not available at the time of the original classification and shall be reviewed administratively by the Full Board.
(d) The motion shall set forth the offender’s full name, date of birth, address, sex offender number (SON), name and address of legal representative (if applicable), name and address of legal guardian (if applicable), the classification level sought, together with the reasons for seeking such determination. The motion shall include proof, by a Preponderance of the Evidence, that the sex offender:
1. has, since release from incarceration, remained at liberty for more than five continuous years; and
2. has not committed or been convicted of a sex offense since either accepting the Board’s recommended classification or since his classification hearing. The term conviction as used in this reclassification process shall include an adult conviction or an adjudication as a youthful offender or as a delinquent juvenile by reason of a crime as well as any admission to sufficient facts as to warrant a guilty finding.
(e) In addition, the sex offender’s motion for reclassification shall also provide proof, by a Preponderance of the Evidence, that his risk of reoffense and the degree of dangerousness he poses to the public has been reduced through new and updated information on the following Factors for classification found at 803 CMR 1.40:
1. his response to or completion of sex offender treatment (Factors 11, 14, 18, 24);
2. current home situation (Factor 12);
3. physical condition (Factor 13);
4. any new psychological or psychiatric profiles indicating his risk to reoffend (Factors 1, 15);
5. absence of alcohol and drug abuse while at liberty (Factor 16);
6. recent behavior (Factors 22);
7. updated victim impact statement (Factor 23); and
8. new or updated materials submitted by the sex offender (Factor 22).
803 Code Mass. Regs. §1.37C (c)-(e) (emphasis added).

 The regulations do call for updated materials not only from the sex offender (Factor 22), but also from the victim in the form of a victim impact statement under Factor 23, which reads:
Factor 23: Victim Impact Statement [M.G.L.c. 6, §178K(1)(k)[. This Factor is applicable to all Adult and Juvenile Offenders. The SORB will consider a written statement submitted by the victim of a sex offense, the parent/guardian of a child victim or the guardian of an adult victim of a sex offense that resulted in a conviction or adjudication. The SORB recognizes the substantial impact sex offenses have on victims. The SORB will routinely review and consider written statements submitted by the victim(s).
803 Code Mass. Regs. §1.40(23).
The purpose of this statement, unlike the victim impact statement made to the court at the time of sentencing (G.L.c. 279, §4B), is to serve as one of the “criminal history factors indicative of a high risk of reoffense and degree of dangerousness posed to the public." G.L.c. 6, §178K(l)(a). The Board’s denial of reclassification did not cite Factor 23 or the victim impact statement, and it does not change the predictive power of the sex offense on the question of reoffense and dangerousness.

 The SORB’s memorandum attempts to justify the Decision on grounds that the Board did not give — namely that the passage of 7 years “transitioned” placed Doe “to the moderate risk band.” SORB Memo, p. 4. The problem with that argument (beyond the impropriety of relying upon grounds not given by the Board) is that the 2003 Decision placed Doe in a moderate risk category when, by the logic of the SORB’s counsel, he was in a high “risk band.” That illogical argument does not save the Decision from arbitrariness.

 That regulation states:
Factor 20: Recent Behavior while on Probation/Parole [M.G.L.c. 6, §178K(l)(i)[. The Act specifically mandates the SORB to examine each offender’s recent behavior, including behavior while being supervised in the community on conditional release. An offender who unsatisfactorily adjusts to the external controls inherent to community supervision poses a significant risk when those controls are removed (Scott, 1994). Unsatisfactory adjustment is evidenced by violations of the rules of the supervising agency or the conditions of release. In determining the potential dangerousness this Factor may represent the Board may consider such elements as:
(a) the number of violations the offender received during his period of supervision;
(b) the seriousness of the violation reported in the violation notice or report; and/or
(c) the length of time that has elapsed since the offender’s last violation notice or report and his release from supervision. This Factor shall be applied to both Adult and Juvenile Offenders as well as Juveniles who were subject to any other forms of conditional release other than probation or parole.
803 Code Mass. Regs. §1.40(20).

 At p. 10, the Board’s memo faults Doe for documenting that his stable employment and family situation have remained the same, contending that “the plaintiffs situation has changed little.” It characterizes the termination of Doe’s probation as a “mitigating factor” that “no longer applies”— without noting that Doe’s probation ended because he successfully completed it.

 The courts “will not ‘supply a reasoned basis for the agency’s action that the agency itself has not given.’ ” Costello v. Dep't. of Pub Utils., 391 Mass. 527, 536 (1984), quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., 419 U.S. 281, 285-86 (1974).

 The suggestion that there is no liberty or privacy interest because “[h]e is no worse off than he was before the motion [for reclassification] was denied” proves too much. One might just as well argue that a civilly-committed sex offender is no worse off if his petition for release under G.L.c. 123A, §9 is denied. While the statement is true, it has no constitutional relevance.

 The problem is particularly acute in cases like this one where the Court’s not-guilty finding on the most serious charge precludes punishment on that count.

 Not all petitioners for reclassification will have an attorney (indeed, this case may be exceptional in that regard).

 The Court does not assume that these resources are available, because of the pending appeal of the decision invalidating such upward classifications in the absence of a new sex offense. Doe 16748, 82 Mass.App.Ct. at 157.